**In re SCHWINN BICYCLE CO., et al., Debtors.**

**SCHWINN PLAN COMMITTEE, Plaintiff,**

**v.**

**AFS CYCLE & CO. LTD., et al., Defendants.**

**Bankruptcy Nos. 92 B 22474 to 92 B 22482.**

**Adv. No. 94 A 01618.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 10, 1996.

Howard Feller, Dion W. Hayes, McGuire Woods Battle & Boothe, Richmond, VA, Mark K. Thomas, Terry R. Horwitz Kass, Katten Muchin & Zavis, Chicago, IL, for Schwinn Plan Committee.

Eric G. Grossman, Bailey Borlack Nadelhoffer & Carroll, Chicago, IL, Liang Houh Sheih, Taipei Taiwan, ROC, for Fairly Bike and Ming–Tay.

Debra Lee Allen, Transamerica Insurance Finance Corp., Towson, MD, Thomas R. Hill, Rooks Pitts & Poust, Chicago, IL, for AFS Cycle & Co. (Transamerica Ins. Fin. Corp.).

Nate Fata, Masuda Funai Eifert & Mitchell, Chicago, IL.

David L. Eaton, Kirkland & Ellis, Chicago, IL.

Stuart A. Shanus, Bell Boyd & Lloyd, Chicago, IL.

John F. Young, Dennis M. O'Dea, Keck Mahin & Cate, Chicago, IL.

Michael L. Orndahl, Militello Zanck & Coen, Crystal Lake, IL.

Robert H. Skilton, Gardner Carton & Douglas, Chicago, IL.

John F. Donogher, Hodgson Russ Andrews Woods & Goodyear, Buffalo, NY.

Scott J. Goldstein, Spencer Fane Britt & Browne, Kansas City, MO, for Betty Campbell.

Ronald D. Weiss, Melville, NY.

Thomas E. Raleigh, Raleigh Helms & Finke, Chicago, IL.

Scott L. Lanin, Farrell Fritz Caemmerer Cleary Barnosky & Armentano, Uniondale, NY.

Michael P. O'Neil, Freeborn & Peters, Chicago, IL.

Jill Ann Coleman, Neal Gerber & Eisenberg, Chicago, IL.

John K. Kneafsey, Daniel P. Dawson, Nisen & Elliott, Chicago, IL, for TI Reynolds 531 Ltd.

Steven M. Austermiller, Pederson & Houpt, Chicago, IL.

Christy S. Beznoski, Mayer Brown & Platt, Chicago, IL.

F.M.H. Thuis, Thuis & Partners, The Netherlands.

Keith K. Nicolls, McCaleb Lucas & Brugman, Oakbrook Terrace, IL.

James G. Poskozim, Supervising Attorney, Commonwealth Edison Co., Chicago, IL.

Duane L. Coleman, Lewis Rice & Fingersh, St. Louis, MO.

Norman B. Newman, Much Shelist Freed Denenberg & Ament, Chicago, IL.

John J. Stamos, Laurie S. Elkin, Stamos & Trucco, Chicago, IL.

John Carlson, Parker Chapin Flattau & Klimpl, New York City.

Eric C. Duncan, Gerald C. Condon Jr. & Assoc., Green Bay, WI.

Robert Ralis, Chicago, IL.

Frank J. Kokoszka, Blau & Kokoszka, Chicago, IL.

Keith L. West, Mundelein, IL.

Catherine Steege, Jenner & Block, Chicago, IL.

Thomas Cunningham, Smith Williams & Lodge, Chicago, IL.

Sidney M. Kaplan, Chicago, IL.

Scott E. Stassen, Chicago, IL.

James P. Wognum, Chicago, IL.

Joseph E. Cohen, Cohen & Krol, Chicago, IL.

Rexford L. Lyon, Lyon & Glassman, Florham Park, NJ.

Mark J. Muscarello, Muscarello Crisanti & Young, Elgin, IL.

Mark S. Schmitt, Miller Simon & Maier, Milwaukee, WI.

Judd F. Osten, Atlanta, GA.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION OF REGAL INTERNATIONAL TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary relates to the bankruptcy proceeding filed by Schwinn Bicycle Co. and various related entities (collectively "Debtor" or "Schwinn") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Schwinn's liquidating Plan was confirmed on October 7, 1992. On October 3, 1994, as permitted by the confirmed Plan, Plaintiff Schwinn Plan Committee ("Plaintiff" or "Committee") filed the instant Adversary Complaint against a number of defendants, including Defendant Regal International Development Co., Ltd. ("Regal"), a Hong Kong Corporation and former Schwinn supplier. The Complaint alleges that Schwinn paid $3,735,969.15 to Regal, within 90 days prior to filing bankruptcy, in order to satisfy five invoices for bicycles manufactured by Regal and delivered to Schwinn. The Committee asserts that the transfer was preferential and is therefore recoverable, under 11 U.S.C. §§ 547 and 550.

Regal moved to dismiss the Committee's Adversary Complaint under Fed.R.Bankr.P. 7012 (Fed.R.Civ.P. 12(b)(2)) for want of personal jurisdiction ("Motion"). Both parties filed affidavits, the issue of personal jurisdiction was severed for trial, the case was called for trial, by stipulation the affidavits were admitted into evidence, and the parties rested. (See Order entered November 13, 1995.) Both sides waived final argument, relying on their briefs. On this record, the Court now makes and enters its Findings of Fact and Conclusions of Law. Pursuant thereto, it is concluded that *in personam* jurisdiction lies over Regal, and by separate order the motion to dismiss is denied.

### FINDINGS OF FACT

In support of its Motion, Regal filed an affidavit sworn to by one of its officers, Mr. Lam Ping Yin, ("Lam Affidavit"). Fourteen invoices were appended, covering shipments of bicycles which arrived in the ports of Cranbury, N.J., Rancho Cucamonga, California, and West Chicago, Illinois. (Regal's Exhibit A).

As part of its response, the Committee submitted an affidavit sworn to by Mr. Gary E. Thorholm, Schwinn's assistant treasurer during the relevant period of time. ("Thorholm Affidavit"). The Committee also supplied five Negotiation Advices it received from the Harris Bank in Chicago which indicate five payments to Regal on October 7, 1992, (Schwinn Exhibit A), and copies of the same fourteen invoices that Regal submitted. (Schwinn Exhibit A).

The Committee seeks to recover from Regal five preferential transfers consisting of payments totaling $3,735,969.15. These were payments for bicycles that Regal manufactured for Schwinn. In March, April, and August of 1992, Schwinn sent certain purchase orders by telecopy to the China Bicycles Company (Holdings) Limited, ("China Bike"), at its Hong Kong offices. Lam Affidavit ¶ 3. China Bike was then a long time manufacturer and supplier of bicycles to Schwinn, but did not accept these particular purchase orders. Instead, it suggested that Schwinn obtain the bicycles from Regal, which was China Bike's "affiliate"[1]. Lam Affidavit ¶ 4. China Bike also suggested that Schwinn establish documentary letters of credit to pay Regal for the bicycles it had ordered. *Id.* On September 18, and again on September 20, 1992, Regal shipped bicycles according to the earlier purchase orders originally sent to China Bike, which had been routed to Regal. Thorholm Affidavit, ¶ 2, Committee, Exhibit A.

The record does not describe what, if anything, occurred during the period between

---

1. Neither party has on the present record defined the relationship between China Bike and Regal any more clearly than stating that Regal is an "affiliate" of China Bike.

August 1992, when Schwinn sent out the last purchase order, and September 18 and 20, 1992, when the goods were shipped. No proof was offered as to any negotiations undertaken between Schwinn and Regal prior to Regal's acceptance of the purchase orders. Nor does the evidence show how Regal obtained manufacturing specifications for the bicycles, or whether any sample bicycles were sent to Schwinn in the United States for approval before the ordered bicycles were finished and shipped. However, it is clear that Regal accepted the earlier purchase orders on September 18 and 20, 1992, by shipping the bikes and issuing its invoices for sale of those bicycles. Regal Exhibit A.

■ Regal asserted that, before and during the time it manufactured the bicycles, it "never negotiated, or even spoke with, any representatives of Schwinn." Lam Affidavit ¶ 6. It argued that, since the Committee did not specifically contest this fact in the Affidavit submitted with its Memorandum, that fact should be deemed admitted. The Committee did claim in its Memorandum that Regal "negotiated and consummated contracts directly with the debtor." Committee Memorandum, p. 11. While it might be reasonable to infer from the large quantity of custom-made bicycles purchased that there were some communications between Schwinn and Regal, the Committee did not submit any evidence at all to this effect. Gary Thorholm's Affidavit does not describe any such communications, and therefore on this record it cannot be found that Schwinn and Regal negotiated regarding the purchase orders. Rather, it must be found from reasonable inference that Regal accepted the Schwinn purchase orders referred to it by China Bike.

As China Bike suggested, Schwinn did procure the letters of credit from Harris Bank in Chicago on September 4 and September 8, 1992, naming Regal as the beneficiary. Committee Exhibit A. On September 18 and September 20, 1992, Regal delivered the bicycles in Hong Kong pursuant to the Schwinn purchase orders which requested the bicycles to be shipped "FOB Hong Kong." *Id.* The bicycles later arrived in the United States ports of West Chicago, Illinois; Rancho Cucamonga, California; and Cran-

bury, New Jersey. *Id.* On October 7, 1992, which was twenty days after the bicycles arrived in the port of Hong Kong, Regal received from Harris Bank the proceeds of two commercial documentary letters of credit that Schwinn had established with the bank for Regal's benefit. Thorholm Affidavit ¶ 2. October 7, 1992, was less than 90 days before the date that Schwinn filed its bankruptcy petition.

Other than through its appearance by counsel in this proceeding, Regal never appeared, filed a proof of claim, or otherwise participated in the Schwinn bankruptcy proceeding. Lam Affidavit ¶ 1. Regal is a Hong Kong corporation that has no offices, telephone numbers, employees, or agents in the United States. Lam Affidavit ¶ 8. Furthermore, Regal does not maintain any assets or business records in the United States and has not contracted with any company in this country or sent any representatives to the United States in connection with the sales to Schwinn. Lam Affidavit ¶ 9.

Additional factual statements contained in the Conclusions of Law will stand as Additional Findings of Fact.

## *CONCLUSIONS OF LAW*

### *Jurisdiction*

■ Fed.R.Civ.P. 12(d) (incorporated here by Fed.R.Bankr.P. 7012) allows a party to assert certain defenses prior to trial on merits, one of these being lack of personal jurisdiction. The rule contemplates hearing and determination of jurisdictional issues in advance of trial. 2A Moore, *Federal Practice* ¶ 12.16, at 2352–54 (2d ed. 1968). Since there is no statutory direction for procedure where personal jurisdiction is in issue, the procedural mode is left to the trial court. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971) *citing Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). When considering a challenge to its jurisdiction, a court may receive and weigh affidavits. 5 Wright and Miller, *Federal Practice and Procedure,* 1351 at 565 (1969). During this preliminary proceeding, the burden of proof rests on the party asserting jurisdiction. If the court's

decision is based on submission of written materials, the burden of proof is usually met by a prima facie showing that personal jurisdiction is conferred under the relevant jurisdictional scheme. *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120, 1122 (7th Cir.1983); *Neiman v. Rudolf Wolff & Co., Ltd.,* 619 F.2d 1189, 1190 (7th Cir.1980). Later in the proceeding, if a motion to dismiss for lack of personal jurisdiction is filed after parties have taken discovery and the court has conducted an evidentiary hearing on a motion, plaintiff must establish jurisdiction by a preponderance of evidence. *Levant Line, S.A. v. Marine Enterprises Corporation (In re Levant Line, S.A.),* 166 B.R. 221, 224 (Bankr.S.D.N.Y.1994).

■ The parties here had ample opportunity to take discovery, and at trial they stipulated to rest on the affidavits and briefs they filed. Therefore, since a trial was held on the issue of personal jurisdiction, the Committee had to show personal jurisdiction over Regal by a preponderance of the evidence.

### Subject Matter Jurisdiction and Venue

Subject matter jurisdiction in this case lies under 28 U.S.C. § 1334(b). This matter further constitutes a core proceeding under 28 U.S.C. § 157(B)(2)(B), (C), (F) and (O), and has been properly referred here under 28 U.S.C. § 157(a) and Local General Rule 2.33(A) of the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409.

### Personal Jurisdiction

■ Personal jurisdiction may be established either by proper service of process, *see Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987), or by defendant's waiver of any defect in service, *see Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). Service over a non-resident defendant will be legally valid so long as a federal or state statute establishing amenability to service is complied with and the exercise of jurisdiction further accords with due process protections afforded by the Fifth and Fourteenth Amendments. *See Omni Capital Int'l,* 484 U.S. at 104, 108 S.Ct. at 409 (federal courts look to Fifth Amendment due process standards when a federal statute governs service of process).

■ Physical service of process on Regal, as shown on return of the original Summons to it in this case, has not been disputed. Therefore, it may no longer be challenged, Fed.R.Civ.P. 12(g), (h) (Fed.R.Bankr.P. 7012(b)), and is presumptively valid under applicable service rules.

Two alternative theories were asserted by the Committee to show *in personam* jurisdiction over Regal. First, that due process was satisfied as to it. Second, that, because personal jurisdiction lies over China Bike, jurisdiction lies over Regal as an "affiliate" of China Bike. For reasons stated below, jurisdiction over Regal is found to have been established only under the first theory.

### I. *FIFTH AMENDMENT DUE PROCESS UNDER U.S. CONSTITUTION*

■ A court may have *in personam* jurisdiction over a defendant that has engaged in conduct establishing minimum contacts with the forum. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *International Shoe* held that

> due process requires . . . that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. at 316, 66 S.Ct. at 158. Out of this language, courts have fashioned a two-pronged test. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). The first prong requires that to find jurisdiction a court must determine whether the defendant has had "minimum contacts" with the forum state. If the defendant has had such "minimum contacts," the second prong of the test requires that jurisdiction over the defendant be "fair and reasonable." *Heritage House Restaurants, Inc. v. Continental Funding Group,*

*Inc.,* 906 F.2d 276, 283 (7th Cir.1990); *Unis International Corporation v. M.L. Marketing,* 1993 WL 116744, *2 (N.D.Ill.1993).

■ Authorities examining *in personam* jurisdiction in different factual settings have further explained the minimum contacts requirement. *Hanson v. Denckla* stressed the defendant's contacts with the forum and stated that "[the application of the [minimum contacts] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citations omitted). The "purposeful" availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

The *International Shoe* requirement that "traditional notions of fair play and substantial justice" not be offended has also been reinforced. *See Kulko v. California Superior Court,* 436 U.S. at 97, 98 S.Ct. at 1699 ("basic considerations of fairness" emphasized); *Rush v. Savchuck,* 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (defendant must engage in "purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable"). Particularly, the court in *World–Wide Volkswagen Corp. v. Woodson* linked the "fair and reasonable" requirement with the ability of the defendant to foresee that its conduct would make it amenable to suit in the forum. 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980).

The court explained the "foreseeability" factor as "not the mere likelihood that a product will find its way into the forum ... [r]ather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. 286 at 296, 100 S.Ct. 559 at 567.

■ Personal jurisdiction may be asserted over a defendant under either of two theories: general or specific jurisdiction.

When a suit does not arise out of the defendant's activities in the forum state, the court can only exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum must be rather extensive for personal jurisdiction to obtain. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984) n. 8 (for general jurisdiction to obtain, contacts must be "continuous and systematic").

■ In contrast, a court may exercise specific jurisdiction when a suit arises out of the defendant's activities within the forum state. In such a case, the contacts need not be so extensive, but "the 'fair warning' requirement inherent in due process still demands that the defendant have 'purposefully directed' its activities at the forum." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 794 (1984).

■ In *International Shoe,* the minimum contacts test was applied to a domestic corporation, not a foreign one like the Defendant here, and the issue was whether the defendant's contacts were sufficient to satisfy the due process requirement of the Fourteenth Amendment to the United States Constitution. 326 U.S. at 311, 66 S.Ct. at 156. Nonetheless, the *International Shoe* standard is applicable to both foreign and domestic defendants with the difference that proper constitutional focus shifts from one of due process under the Fourteenth Amendment, which concerns a State's exercise of jurisdiction, to that of due process under the Fifth Amendment. *See Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976) (aliens are afforded protection under the Fifth Amendment); *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896) (same).

■ Federal courts sitting in diversity jurisdiction look to a defendant's "minimum contacts" with the state in which they sit to find out whether personal jurisdiction comports with constitutional due process. *Bally Export Corporation v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir.1986). However, when

dealing with a federal question rather than sitting in diversity jurisdiction, federal courts have looked to a defendant's contacts with the United States rather then the forum state where they are sitting. *See United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534–35 (7th Cir.1991) (Judge Easterbrook stating, *in dicta,* that the Seventh Circuit favors minority approach of looking to minimum contacts with the United States, not forum state, when reviewing personal jurisdiction in federal question cases); *see also Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Justice Stewart, in dissenting opinion joined by Justice Brennan, reaching "national contacts" question and holding that due process "requires only certain minimum contacts between the defendant and the sovereign that has created the court").

In *Ace Pecan Company, Inc. v. Granadex International Ltd. (In re Ace Pecan Company)*, the test of minimum "aggregate contacts" with the United States was followed to find personal jurisdiction over a Swiss company. 143 B.R. 696 (Bankr. N.D.Ill.1992) (Sonderby, J.). Other bankruptcy court decisions have also applied the two-pronged test of "minimum contacts" and "fair and reasonable" to protect foreign persons and corporations. *See In re A & W Publishers, Inc.*, 39 B.R. 666, 667 (Bankr. S.D.N.Y.1984) (finding that a minimum contacts test applies in bankruptcy proceedings to protect foreign corporations against being subject to jurisdiction in this country without due process of law); *see also Deak & Co., Inc. v. R.M.P. Soedjono (In re Deak & Co., Inc.)*, 63 B.R. 422 (Bankr.S.D.N.Y.1986); *Banco Latino International v. Amazonas International Bank, Ltd.,* 176 B.R. 278 (Bankr.S.D.Fla.1994). Similarly, it must be decided here whether Regal had minimum contacts with the United States to see whether exercise of jurisdiction over it comports with Fifth Amendment due process.

### The Illinois Long–Arm Statute is not Applicable

Regal acknowledges that the proper standard is whether a foreign defendant has "aggregate contacts" with the United States.

However, it argues that jurisdiction must first be found under the Illinois Long–Arm statute before analyzing Fifth Amendment due process concerns. Regal Motion, pp. 3–5. This is not correct. *See Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.)*, 835 F.2d 1341, 1343 (11th Cir. 1988) (finding that Fed.R.Bankr.P. 7004 provides the procedural basis for personal jurisdiction in an adversary proceeding to avoid fraudulent transfers to international defendants, so that resort to state long-arm statute was unnecessary); *Banco Latino International v. Amazonas International Bank, Ltd. (In re Banco Latino International),* 176 B.R. 278, 282 (Bankr.S.D.Fla.1994) (inquiry regarding personal jurisdiction over foreign bank limited to whether such jurisdiction comports with due process standards of the Federal constitution); and *West v. Vandenheuvel,* 1995 WL 360461, \*3 (N.D.Ill.1995) (finding that the "catch-all" provision of the Illinois "long-arm" statute, which makes the statute co-extensive with due process limits of the Federal Constitution, has eliminated the need to undertake a "long-arm" inquiry).

### The "Stream of Commerce" Test Cannot be Applied Here

The Committee requests that the "stream of commerce" rule of personal jurisdiction be applied. The rule allows a forum to assert jurisdiction over a nonresident manufacturer when that manufacturer places an injury-causing product into the "stream of commerce" and the product causes injury in the forum State even if the product is not directly sold to a forum resident. Under that approach, a state can exercise personal jurisdiction over a non-resident defendant whose product is brought into the state by actions of an independent distributor, on grounds that the defendant, by purposefully placing its product into the "stream of commerce" of that state, benefits from being protected by its laws. *See* Pamela J. Stephens, *Sovereignty and Personal Jurisdiction Doctrine–Up the Stream of Commerce Without a Paddle,* 19 Fla.St.U.L.Rev. 105, 117 (1991). The "stream of commerce" theory was developed by the Supreme Court in *World–Wide Volkswagen:*

The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World–Wide Volkswagen,* 444 U.S. 286, 297–298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Later, in *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* a divided Supreme Court did not adopt a single view on proper application of the "stream of commerce" test. 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).[2]

In this Circuit, knowledge by the manufacturer that a product which ultimately caused an injury will reach a forum has been found to give a court in that forum personal jurisdiction over the manufacturer. *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 946 (7th Cir.1992). In *Dehmlow,* the court, sitting in a diversity case, found personal jurisdiction over an out-of-state manufacturer that did not directly sell fireworks to an Illinois citizen, but knew that its product would reach Illinois consumers in the stream of commerce. *Id.* at 946.

 Clearly, if the stream of commerce theory were applied here, jurisdiction would be found over Regal since it sold bicycles directly into the United States and consequently into the "stream of commerce." However, because the "stream of commerce" test is only applied to tort cases, its application here is inappropriate. The special considerations that apply in tort cases do not apply here.

In *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.,* 597 F.2d 596 (7th Cir.1979), the opinion noted the different considerations involved in assessing whether a court has jurisdiction in tort and contract cases:

[T]he forum state has a greater interest in protecting its citizens by providing a local forum in cases which involve effects 'of a sort highly dangerous to persons and things.' ... These would normally be product liability and other tort cases ... The forum state has a lesser interest in protecting a corporation in an interstate contract dispute, especially when the corporation left the state to solicit and secure the contract, because the effects of a commercial contract are unlikely to involve danger to persons or things within the state's borders.

597 F.2d 596, 602, n. 11 (7th Cir.1979), (*quoting Restatement (Second) of Conflict of Laws* § 37 (1971).

### *Regal Had Sufficient Contacts with the United States*

 Regal had sufficient contacts with the United States to support specific *in personam* jurisdiction. While the "stream of commerce" theory cannot be applied here, the concept of foreseeability can. The Supreme Court has stated that "the foreseeability that is critical to the due process analysis ... is that the defendant's conduct and connection with the forum State are such that he

---

**2.** The *Asahi* case began as a products liability action brought against several defendants in a California state court by a California resident claiming that his injury in a motorcycle accident was caused by the failure of a defective tire. The tire's Taiwanese manufacturer cross-claimed against Asahi, the Japanese manufacturer of the tire's valve assembly, for indemnification. Asahi defended by challenging the court's jurisdiction. Although the Supreme Court agreed unanimously on other grounds that the California court's exercise of jurisdiction was unreasonable, Justice O'Connor, in a portion of her opinion for the Court that was joined only by three other justices, argued that jurisdiction could not be justified under the "stream of commerce" theory. She took the position that "[t]he placement of a product into the stream of commerce, without

more, is not an act of the defendant purposefully directed toward the forum state." Rather, "additional conduct" indicating "an intent or purpose to serve the market in the forum state" also is necessary. 480 U.S. at 112, 107 S.Ct. at 1033. Justice Brennan, joined by Justices Blackmun, Marshall, and White, disagreed, arguing that a defendant properly may be subject to jurisdiction whenever "the regular and anticipated flow of products," as opposed to "unpredictable currents or eddies," leads the product to be marketed in the forum. This latter test set out by Justice Brennan is a more inclusive test. If this was a case dealing with a personal injury, then either test would allow this Court to have jurisdiction since Regal sold the bicycles directly into the United States.

should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567.

■ In accepting a contract to sell bicycles to an Illinois corporation for resale on the American consumer market, Regal should have reasonably foreseen that it might be required to defend litigation in the United States arising out its commercial relationship with Schwinn. Foreign companies that enter into a debtor-creditor relationship with a United States company should not be surprised if they must defend an action in our courts arising out of that relationship.

■ One major goal of our bankruptcy system is preserving the debtor's estate for all creditors. The law seeks to prevent creditors from taking advantage of special relationships with debtors so as to receive preferred payments for their debt within the statutory period before bankruptcy when other creditors are not being paid.

■ By entering into a debtor-creditor relationship with a United States corporation, Regal could have used the bankruptcy system to its advantage.[3] If Regal had not been paid for its goods, then it surely would have filed a large claim against the bankruptcy estate. A foreign company cannot enter into a major debtor-creditor commercial relationship with a United States corporation and be entitled to use advantages that our bankruptcy system provides for all creditors without submitting itself to jurisdiction when the result may be detrimental to it.

The contacts test is not met if those contacts were merely "random," "fortuitous," or "attenuated." *Keeton v. Hustler Magazine*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). However, Regal purposefully availed itself of United States commercial law by accepting large purchase orders for sale of goods to a United States corporation. Regal manufactured bicycles according to Schwinn's specifications and sold these bicycles to Schwinn to fill purchase orders costing almost $4 million. This was not a sale to a foreign middleman for resale of the goods to an American corporation without Regal's involvement. Nor were these goods fungible; they had to meet Schwinn specifications. In this case, Regal dealt with a United States corporation and manufactured custom-made goods for that United States business. Regal was subject to Schwinn's right of rejection if the goods were non-conforming, and Regal drew on a letter of credit from an American bank as payment. As a result of such acts, it cannot be said that Regal's contacts with the United States and Schwinn were "random," "fortuitous," or "attenuated." Moreover, the action here arises out of payments for the Regal sales and is thereby specifically related to the contacts of Regal that are relied on for jurisdiction.

■ Regal argues that the "FOB Hong Kong" term in Regal's invoices diminishes its contacts with Illinois and the United States. Regal Reply Memorandum, n. 8. It claims that the "relevance of the FOB term is that, as a matter of law, Regal's performance occurred in Hong Kong, not in the United States". *Id.* (*citing* UCC § 2–319(1)(a)). However, in considering what import an "FOB" term has on contacts of a defendant with a forum, the opinion in *Lakeside Bridge & Steel*, 597 F.2d 596, 603 n. 14 (7th Cir.1979) found it to have limited importance:

> If "[t]he law relating to the passage of risk in the sale and carriage of goods … is directly relevant to the policies governing personal jurisdiction over foreign corporations," we question at least the weight to be given that factor.

*Id.* at 604.

It is doubtful that the "FOB" term in Regal's contract has much significance to the jurisdiction issue. Regal made a contract for the sale of goods to an American company knowing that the ultimate destination of the goods was the United States. Schwinn might have rejected the goods as non-conforming or defective after delivery in the United States and inspection here. It cannot

---

**3.** According to the Committee, Regal could have filed an unsecured claim of $7,746.43 against debtor's estate. Regal has not done so because, by doing so, it would have submitted itself to jurisdiction and its claim would not be paid until after this preference action is decided and any preferential transfers returned to debtor's estate. *See* 11 U.S.C. § 502(d).

be said, for purposes of this jurisdiction inquiry, that Regal had fully performed the contract by merely delivering bikes "FOB" in Hong Kong for ultimate shipment to the United States. Regal cannot argue that, because the risk for the loss of the goods during their ocean shipment shifted in Hong Kong to Schwinn, its acceptance of the purchase orders did not establish a jurisdictional contact with the United States.

Regal relies on *Semborg Corporation v. Lacey*, 1995 WL 35393 (N.D.Ill.1995) and *Sjostrom & Sons, Inc. v. Wilson Tile & Terrazzo, Inc.*, 1992 WL 280432 (N.D.Ill. 1992). It argues that the defendants' contacts with Illinois in *Semborg* and *Sjostrom & Sons* were similar to Regal's contacts with the United States in this case, and since in those cases the courts found that asserting jurisdiction would be unconstitutional, the same result should be reached here. Both *Semborg* and *Sjostrom & Sons* dealt with breach of contract actions. In both cases, the defendants were not residents of Illinois, did not travel to Illinois, did not transact any business in Illinois, negotiations for the contracts took place outside of the forum and the contracts were to be performed outside of the state. In *Semborg*, a partnership was formed and defendant was to provide that partnership with certain personal services outside of the forum, such as writing of comedy sketches. Similarly, defendant in *Sjostrom & Sons* was allegedly bound to provide certain construction and contracting services outside of the forum. In both *Semborg* and *Sjostrom & Sons*, the only contacts that defendants had with the forum were telephone conversations and faxes.

Despite sharing some factual similarities with this case, the holdings in *Semborg* and *Sjostrom & Sons* are not persuasive here. First, in both *Semborg* and *Sjostrom & Sons*, it was found that applicable contracts were to be performed fully outside of the forum. In contrast, here it was intended that the goods be delivered in the United States and Schwinn kept a right to reject these goods if they did not conform to the contract. *See* 810 ILCS 5/2–512. It cannot be said that Regal's contract was to be fully performed outside of the United States.

Second, both *Semborg* and *Sjostrom & Sons* dealt with domestic defendants being hailed into an Illinois district court. In this case, Regal is an international defendant. Federalism concerns are diminished in the case of an international defendant, and the inquiry should focus on whether it is "fair and reasonable" to maintain jurisdiction over the defendant. *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *see Ace Pecan Company, Inc. v. Granadex International Ltd. (In re Ace Pecan Company)*, 143 B.R. 696 (Bankr.N.D.Ill.1992) (Sonderby, J.) ("[i]n applying the aggregate contacts analysis, the key considerations are fairness and reasonableness of requiring the alien defendant to appear in the United States"). The focus in this case should be on whether it is "fair and reasonable" for Regal to defend in this forum.

The finding that Regal, a non-resident seller, has had sufficient contacts with the United States is also coherent with a trend in case law wherein courts have more readily found contacts between a non-resident seller than a non-resident buyer and the forum. *See Borg–Warner Acceptance Corporation v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir.1986) (noting that a nonresident purchaser might be considered to have less contact with the forum state than a nonresident seller) (citations omitted).

### Asserting Jurisdiction over Regal is fair and reasonable

Not only does Regal have the required minimum contacts with the United States, but application of personal jurisdiction over it in this case is "fair and reasonable." In the context of international commerce, while the minimum contacts standard has been retained, the fairness and reasonableness of requiring a defendant to appear in the United States has enhanced weight. *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *see also* Lilly, *Jurisdiction over Domestic and Alien Defendants*, 69 Vand.L.Rev. 85 (1983); John T. Cross, *Viewing Federal Jurisdiction*

*through the Looking Glass of Bankruptcy*, 23 Seton Hall L.Rev. 530, 535 (noting that, while the Fifth Amendment clearly applies to federal courts, it is not clear that it restricts those courts to the same extent that the Fourteenth Amendment restricts the states). Thus, in this case, when there have been several contacts with the United States and the state of Illinois, weight should be placed on whether it is "fair and reasonable" to require Regal to defend itself in this Court.

■ The following factors have been found relevant to a "fair and reasonable" jurisdictional analysis: (a) defendant's burden of defending in the forum; (b) the extent of conflict with the sovereignty of defendant's state; (c) the forum's interest in adjudicating a dispute; (d) the most efficient judicial resolution of the controversy; (e) the importance of the forum to plaintiff's interest in obtaining convenient and effective relief; and (f) the existence of an alternative forum. *Nordberg v. Granfinanciera (In re Chase & Sanborn Corp.)*, 835 F.2d 1341, 1345 (11th Cir. 1988) (*citing In re Deak*, 63 B.R. at 430): *see also Adden v. J.D. Middlebrooks*, 688 F.2d 1147, 1155 (7th Cir.1982); *Federal Deposit Insurance Corporation v. British–American Insurance Company, Ltd.*, 828 F.2d 1439, 1441 (9th Cir.1987).

### Defendant's Burden in This Forum

■ Clearly, Regal will be somewhat burdened by having to defend this preference action in the Northern District of Illinois. Regal is a Hong Kong company and has no offices or agents in the United States. However, the burden of litigating in a foreign forum has become less significant as result of technological advances in communication and transportation. *World–Wide Volkswagen Corp.*, 444 U.S. at 292–93, 100 S.Ct. at 564; *Hanson*, 357 U.S. at 251, 78 S.Ct. at 1238. Moreover, the burden on defendant is but one factor to be considered. By itself, this factor may not determine the jurisdictional outcome since a burdensome lawsuit is not considered a violation of due process. *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d at 1144.

Moreover, Regal is a substantial company, well able to manufacture and sell multimil-

lion dollars' worth of product in international commerce. The burden to defend itself overseas is considerably less than it would be for a small company with small sales. Regal was able to hire local counsel who has skillfully represented its interests up to now. There is no reason to think, with the help of such adept counsel and instant modern communications, that Regal will be unduly burdened by this lawsuit despite the long distance between its place of business and Illinois. Moreover, accommodation can often be made to relieve undue burdens that may be demonstrated as by requiring depositions of Regal's officers to be taken either by telephone or in Hong Kong, and use of depositions at trial.

Finally, there was no demonstration by Regal that particular issues in this case will impose specific burdens on it.

### No Conflict with Hong Kong Law

There does not seem to be any conflict with Hong Kong's laws. This action arises under United States Bankruptcy law. Since Regal is not affiliated with the government of Hong Kong, no Hong Kong law or interest of that government is involved in the present controversy. *See Nordberg v. Granfinanciera (In re Chase & Sanborn Corp.)*, 835 F.2d 1341, 1346 (finding that in a dispute arising under the Bankruptcy Code there is no dispute with a foreign law or a state's sovereignty if the defendant company is not associated with the government); and *Banco Latino International v. Amazonas International Bank, Ltd. (In re Banco Latino International)*, 176 B.R. 278, 284 (Bankr.S.D.Fla. 1994) (same).

### Local Interest in Adjudicating the Dispute; The Most Efficient Judicial Resolution of the Controversy

This bankruptcy court has a substantial interest in adjudicating the validity of the questioned payments to Regal in order that "all facets of the [debtor's] reorganization may be consistently decided and all creditors treated fairly." *In re Deak*, 63 B.R. at 433; *see also In re Chase & Sanborn*, 835 F.2d at 1346 (acknowledging the substantial interest

imposed on a bankruptcy court to marshal all assets of the debtor for benefit of the estate). Further, the related bankruptcy case was filed by Debtor, an Illinois company, in this Court. Regal is one of many alleged transferee creditors sued by the Committee to recover preferential transfers for benefit of the Schwinn estate. Our federal bankruptcy scheme ensures that a bankruptcy case is efficiently administrated by providing one forum for adjudicating almost all disputes arising in or out of a particular case. *See In re Chase & Sanborn*, 835 F.2d at 1346 (finding that the court which administered a reorganization case is most efficient forum for litigating preference claim even if defendant is an international corporation).

### Convenient and Effective Relief for the Committee and Non–Existence of an Alternative Forum

Having this Court hear this preference action gives the Committee convenient and effective relief. The Committee sued many other parties here to recover alleged preference transfers, and it is in this forum that most facts in issue can be developed. The Committee has represented the interests of all unsecured creditors in many other matters. In this and other preference actions filed here, the issue as to debtor's insolvency at the time of the alleged payments has been bifurcated into a consolidated hearing, tried, and a ruling announced in favor of the Committee. Clearly, it is convenient and efficient for the Committee and the estate to have this preference action continued to be heard here.

Moreover, no other court could be a forum for this action. Unlike some contract or tort disputes, it is impossible to litigate this action in Hong Kong or anywhere else. This is unlike non-bankruptcy actions, where the law of either country may apply or a foreign court might even apply United States law. This cause of action arose under United States bankruptcy law. Only a United States court would have subject matter jurisdiction. *In re Chase and Sanborn*, 835 F.2d at 1346. No other court, foreign or domestic,

has jurisdiction over the issues here. If the case against Regal were dismissed, the very large preference claim asserted against it here could not be filed elsewhere, and Regal would entirely escape the consequences of any preference payments under our bankruptcy laws. Thus, there is a great interest under our Bankruptcy Code in adjudicating the present dispute, and this Court is at the same time the most efficient and the only forum in which this preference action can be litigated.

### CONCLUSION

The Committee has shown by a preponderance of the evidence that specific *in personam* jurisdiction lies over Regal. In this case, it is clearly "fair and reasonable" to require Regal to defend this action.

## II. THE REGAL AND SCHWINN AFFILIATION DOES NOT SUPPORT JURISDICTION

If Schwinn could properly show personal jurisdiction over Regal, China Bike's "affiliate," through demonstrating a proper level of control, then both entities would be subject to jurisdiction here. *Select Creations, Inc. v. Paliafito America, Inc.*, 852 F.Supp. 740 (E.D.Wis.1994).

The parties here agree that China Bike and Regal were "affiliated" entities, but the record does not describe this relationship in detail. It may well be that jurisdiction could be exercised over Regal because of its "affiliation" with China Bike since it is undisputed that jurisdiction lies over China Bike.[4] However, an undefined and unspecified "affiliation" between China Bike and Regal is not enough. Even existence of a parent-subsidiary relationship is not sufficient to make the subsidiary the parent's agent for jurisdictional purposes. *Integrated Business Info. Serv., Ltd. v. Dun & Bradstreet Corp.*, 714 F.Supp. 296, 299 (N.D.Ill.1989); *see also Brandt Consol. Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 169 (C.D.Ill.1992) (personal jurisdiction over par-

---

4. China Bike was Schwinn's main supplier for many years and, as such, has established continuous contacts with the United States. Moreover, China Bike has also consented to jurisdiction here by filing a claim in the bankruptcy proceedings. *See Schwinn Plan Committee v. TI Reynolds 531 Limited*, 182 B.R. 526, 530 (Bankr. N.D.Ill.1995) (Schmetterer, J.).

ent is proper if subsidiary was acting as parent's agent or was not an independent corporation); 4 Wright & Miller § 1069 at 363–64 (jurisdiction over the parent not proper where subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent).

Thus, the primary issue is how much control the parent has over the subsidiary. *Smith v. Pierce Chem. Co.*, 1992 WL 280404, at *2, 1992 LEXIS 15082, at *6 (N.D.Ill.1992). That the parent exerts some control over the subsidiary will not create the required jurisdictional connection, nor will some overlap in executives and directors. *Integrated Business Info. Serv., Ltd. v. Dun & Bradstreet Corp.*, 714 F.Supp. at 300–01. A finding of personal jurisdiction over the parent, based on activities of the subsidiary, is appropriate only when the parent exerts substantial control over the day-to-day activities of the subsidiary. *Id.* Such control is typically found in situations where a manufacturer parent directs the sales and services of a distributor subsidiary. *Id.* Such day-to-day control with cross-over in business operations is less likely in the context of a holding company. *Id.*

However, the Committee did not establish at trial that Regal's affiliation to China Bike is such that jurisdiction should extend to Regal. It was merely shown that Regal and China Bike were somehow affiliated and that China Bike directed Schwinn's purchase orders to Regal. These factors indicate some intertwining of China Bike and Regal's business activities. Moreover, the fact that Regal was able to produce a custom-made product within two months from the date of the purchase order shows a further connection with China Bike which was Schwinn's usual supplier, since Schwinn had not previously dealt with Regal. This indicates some collaboration between China Bike and Regal involving the subject purchase orders. However, the Committee has produced no details of the relationship between China Bike and Regal to meet its burden under this theory.

Therefore, on the present record the Committee has not established that the relationship between Regal and China Bike supports jurisdiction over Regal.

### CONCLUSION

Plaintiff has established that the defendant Regal engaged in the requisite minimum contacts with the United States and with Illinois, and that it would be fair and reasonable to require Regal to defend this preference action here. Therefore, *in personam* jurisdiction is found, and the motion to dismiss is to be denied by separate order.