In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee for the Debtors' Jointly–Administered Chapter 11 Estates and/or as Litigation Trustee for the DBSI Estate Litigation Trust, Plaintiff,

v.

1031 Exchange Group LLC, et al., Defendants.

Bankruptcy No. 08–12687 (PJW).
Adversary No. 10–54648 (PJW).

United States Bankruptcy Court, D. Delaware.

March 23, 2012.

---

Jami Nimeroff, Brown Stone Nimeroff, LLC, Attorneys at Law, Wilmington, DE, Monte Neil Stewart, Belnap Stewart Taylor & Morris, PLLC, Boise, ID, for Certain Defendants Listed on Exhibit A.

Natasha M. Songonuga, Christopher Viceconte, Gibbons P.C., Wilmington, DE, Dale E. Barney, Mark B. Conlan, Gibbons P.C., Newark, NJ, for James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust.

John D. Demmy, Maria Aprile Sawczuk, Stevens & Lee, P.C., Wilmington, DE, for Certain Defendants Listed on Exhibit A.

Garvan F. McDaniel, Bifferato Gentilotti LLC, Wilmington, DE, Anne R. Myers, Kaufman Dolowich Voluck & Gonzo LLP, Blue Bell, PA, for Certain Defendants Listed on Exhibit A.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with regard to the motion of certain of the defendants (the "Moving Defendants") to dismiss for lack of personal jurisdiction (the "Motion") (Doc. # 141). For the reasons described below, I will deny the Motion.

### Background

On or after November 10, 2008 (the "Petition Date") DBSI, Inc. and certain affiliated chapter 11 debtors each filed voluntary petitions for relief under chapter 11, Title 11, United States Code, 11 U.S.C.

§§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

On August 17, 2010, the James R. Zazzali ("Zazzali"), in his capacity as chapter 11 trustee, and the Official Committee of Unsecured Creditors filed the Second Amended Joint Chapter 11 Plan of Liquidation (Case No. 08–12687, Doc. # 5699) (the "Plan"), which was confirmed on October 26, 2010 (Doc. # 5924) (the "Confirmation Order"). Among other things, the Plan established the DBSI Estate Litigation Trust and approved the appointment of Zazzali as its Trustee (the "Trustee").

On November 5, 2010, the Trustee filed a complaint, as amended, seeking to avoid and recover the value of certain transfers (the "Transfers") made by one or more of the debtors and certain affiliated non-debtors (collectively, the "Debtors"), to approximately 370 defendants named in this action pursuant to 11 U.S.C. §§ 502, 544(b), 548, 549, 550 and/or 551 (the "Complaint"). Based on information in the Plan, it appears that the Trustee is pursuing recoveries for the benefit of twelve DBSI consolidated debtors and thirty-six consolidated non-debtors.

The Complaint asserts a number of fraudulent transfer counts. Exhibit A of the Complaint identifies the approximately 370 persons or entities who are Defendants. The Complaint identifies as to each Defendant the approximately 893 alleged fraudulent transfer transactions. In the aggregate the Complaint seeks recovery of $19,039,303.07. According to Exhibit A of the Complaint, the Defendants reside in thirty-three different states. The Motion is filed by 112 individual or entity Defendants (the "Moving Defendants").

The Complaint was served on each of the Moving Defendants via regular mail in the United States in accordance with Fed. R. Bank. P. 7004. At the time of the Transfers, each of the Moving Defendants was providing real estate brokerage services in the United States, and the events that gave rise to the Transfers occurred in the United States. Additionally, the DBSI entities that made the transfers were all formed in the United States.

## Discussion

**The Complaint's Jurisdictional Allegations Establish a *Prima Facie* Case of Jurisdiction over the Moving Defendants.**

In deciding a personal jurisdiction motion, the Court is obliged to accept all of the well-pleaded allegations in the complaint as true and should construe any factual disputes in favor of the plaintiff. *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330 (3d Cir.2009). Moreover, unless the court is inclined to conduct a full evidentiary hearing regarding the personal jurisdiction motion, the plaintiff is only required to show a *prima facie* case for jurisdiction over the defendants. *Id.* (citing *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir.2007)); *see also Zazzali v. Swenson (In re DBSI, Inc.),* 451 B.R. 373, 375 (Bankr.D.Del.2011) (quoting *Charan Trading Corp. v. Uni–Marts, LLC (In re Uni–Marts, LLC),* 399 B.R. 400, 406 (Bankr.D.Del.2009)).

The Moving Defendants make allegations that are not contained in the Complaint. They assert that there are millions of dollars available to the Trustee and they set forth an exhaustive list of contacts with Delaware that the Moving Defendants profess not to have. There is no factual support for those assertions. To the extent that such allegations are based on the lawyer or paralegal affidavits submitted in support of the Motion, they cannot be considered where the affiant does not have personal knowledge of the facts. *See* Fed. R.Civ.P. 56(c)(4). Tellingly, the Moving

Defendants do not present any facts that would suggest that any of them would suffer serious financial distress if the adversary proceeding stays in this Court.

In deciding a motion to dismiss for lack of personal jurisdiction, this Court engages in a two-step inquiry: (1) determine whether the Moving Defendants had sufficient contacts with the relevant forum, in this case the United States, and (2) evaluate whether this Court's exercise of personal jurisdiction over the Moving Defendants would comport with "traditional notations of fair play and substantial justice." *In re DBSI Inc.*, 451 B.R. at 377.

**Fed. R. Bank. P. 7004 Allows for Nationwide Service of Process.**

Fed. R. Bank. P. 7004(b) allows for the service of process by mailing process to a defendant anywhere in the United States. The Moving Defendants were served in accordance with this Rule. (Docs. ## 5, 6, 15 and 20.) Fed. R. Bank. P. 7004(f), in turn, provides that service in accordance with Fed. R. Bank. P. 7004(b) is sufficient to confer personal jurisdiction over any defendant in a civil proceeding related to a case under the Bankruptcy Code so long as the exercise of such jurisdiction "is consistent with the constitution and laws of the United States."

■ As the Moving Defendants concede, "this Court is bound by the Third Circuit's decision in *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir.2002)." (Doc. # 142, at 8 n. 9.) In *Pinker*, the Court of Appeals held that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Pinker*, 292 F.3d at 369. This is consistent with the view adopted by this Court in *In re DBSI, Inc.*, where the Court concluded that "[b]ecause Rule 7004(d) provides for

nationwide service of process, the relevant forum is the United States." 451 B.R. at 377; *see also Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 123 (Bankr.D.Del.2009) ("The 'forum' in bankruptcy cases is 'the United States in general, not the particular forum state.'") (quoting *In re Uni–Marts, LLC*, 399 B.R. at 406); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir.2004) ("[T]his Court has held broadly that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.") (internal quotation marks and citations omitted); *Owens–Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 630 (4th Cir.1997) ("[T]he question of whether [defendant] has minimum contacts with West Virginia is irrelevant.... [W]e need only ask whether [defendant] has minimum contacts with the United States"....); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990) ("[Defendants'] contacts with the State of Illinois are, for our purposes, simply irrelevant.... [Defendants] have sufficient contacts with the United States to be subject to the district court's *in personam* jurisdiction").

Nationwide service of process pursuant to Fed. R. Bank. P. 7004 is appropriate regardless of whether another forum can exercise jurisdiction over the defendant. *Goodson v. Rowland (In re Pintlar Corp.)*, 133 F.3d 1141, 1146 (9th Cir.1998) ("We therefore decline to import into Rule 7004(f) the 'not subject to the jurisdiction ... of any state' limitation of Civil Rule 4(k)(2)."). Fed. R. Bank. P. 7004(f) is not limited to "defendants who are not subject to the jurisdiction of the courts of general jurisdiction of any state." *Anheuser–Busch, Inc. v. Paques (In re Paques)*, 277

B.R. 615, 632 (Bankr.E.D.Pa.) (internal quotations omitted). Therefore, the presence of other districts that properly have personal jurisdiction over each of the Moving Defendants is irrelevant.

■ Fed. R. Bank. P. 7004, although not a federal statute, serves to authorize nationwide service of process. The Moving Defendants argue that nationwide service of process may only be authorized by a federal statute. (Doc. # 142, at 8 n. 12.) As set forth above, in *In re Tribune Co.,* this Court soundly rejected the defendant's argument that "Bankruptcy Rule 7004(d) cannot authorize extra-territorial service of process ... because it is not [a] federal statute that was passed by both houses of Congress and signed by the President." 418 B.R. at 122. Fed. R. Bank. P. 7004 authorizes nationwide personal jurisdiction over the Moving Defendants regardless of the fact that the grant is contained in a rule rather than a federal statute.

### The Moving Defendants Were Served in the United States

■ Long before the development of the minimum-contacts test for exercising personal jurisdiction over a non-resident, it was established that the mere presence of a defendant in the forum was sufficient to establish jurisdiction over the defendant. *Pennoyer v. Neff,* 95 U.S. 714, 722, 24 L.Ed. 565 (1878), *overruled on other grounds by Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *see also Burnham v. Superior Ct.,* 495 U.S. 604, 610, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) ("Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State"). It follows, then, that where the relevant forum is the United States as a whole,

rather than a particular state, service of process on the defendant anywhere in the United States confers jurisdiction over the defendant without regard to the defendant's particular contacts with the state where the court is located or the burden imposed on the defendant in litigating in that forum.

In *In re Fed. Fountain, Inc.,* the Court of Appeals, *en banc,* found that the defendant's presence in "the territory of the United States" was by itself sufficient to confer jurisdiction over the defendant under Fed. R. Bank. P. 7004, without regard to whether the defendant was put at a "severe disadvantage" as a result. *Warfield v. KR Entm't (In re Fed. Fountain, Inc.),* 165 F.3d 600, 602 (8th Cir.1999).

■ Here, there is no dispute that the Moving Defendants were served while physically present in the United States. No further inquiry is required. This Court has jurisdiction over the Moving Defendants.

### The Moving Defendants Have Sufficient Minimum Contacts with the United States

This Court also has jurisdiction over the Moving Defendants based on their contacts with the United States. The Moving Defendants "concede that they have sufficient contacts with the United States as each lives and/or works in the United States." (Doc. # 142, at 11.) The Moving Defendants are either individuals that reside in the United States or entities that are fully constituted in the United States and have a principal place of business in the United States. The Moving Defendants provided real estate brokerage services in the United States and availed themselves of the protections and benefits of the laws of the United States. The DBSI entities that made the transfers that

are the subject of the Complaint were formed in the United States.

In short, there is no dispute that the Moving Defendants have sufficient contacts with the United States to justify the Court's jurisdiction over them.

**Notions Of "Fair Play And Substantial Justice,"**

■■■ Once the Trustee has made a *prima facie* case of minimum contacts, the burden shifts to the Moving Defendants, to "present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable" and would make litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis added) (citations omitted). The Moving Defendants' burden is a heavy one as they must show that "it is burdensome to litigate in the United States as a whole." *Kesar, Inc. v. Uni–Marts, LLC (In re Uni–Marts, LLC),* 405 B.R. 113, 124 (Bankr.D.Del.2009); *see also In re Uni–Marts, LLC,* 399 B.R. at 408–09 (same); *In re AstroPower Liquidating Trust,* 335 B.R. 309, 321 (Bankr. D.Del.2005) (stating that when considering the fair play and substantial justice prong of the Fifth Amendment jurisdictional analysis, the court should consider, among other factors, the defendant's burden of "litigating in the United States."). When applying the Fifth Amendment Due Process Clause's "fair play and substantial justice" test, the "inquiry requires balancing the burdens placed upon [the defendant] against the interest in furthering the policies of the Bankruptcy Code." *In re DBSI, Inc.,* 451 B.R. at 377. Here, the Moving Defendants have attempted to show only that litigating in Delaware would be a burden. They have made no effort to show—and make no contention—

that litigating in the United States poses any special burden such as an undue financial burden.

■■■ The Moving Defendants understate the burden that they must demonstrate, describing it as a "constitutionally significant inconvenience" which could be satisfied by merely showing an added financial expense associated with litigating in Delaware. (Doc. # 142, at 8.) To the contrary, inconvenience only rises "to a level of constitutional concern" if "jurisdiction in the chosen forum will significantly compromise [a defendant's] ability to defend the lawsuit." *United States ex rel. Landsberg v. Levinson,* Civ. A. No. 03–1429, 2006 WL 895044, at *5–6, 2006 U.S. Dist. LEXIS 100089, at *14–15 (W.D.Pa. Mar. 7, 2006) ("A congressional policy choice that includes nationwide service of process should be afforded substantial weight" and the government interest in enforcing the False Claims Act "outweighs the distance inconvenience presented by Plaintiffs' choice of forum."). The Court of Appeals has emphasized "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1212–1213 (10th Cir. 2000) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 947 (11th Cir.1997)). This is especially true "in this age of instant communication and transportation, [where] the burdens of litigating in a distant forum have lessened." *Peay,* 205 F.3d at 1213 (internal quotations and citations omitted).

The Moving Defendants' inconvenience does not raise to a level that is "constitutionally significant." They did not offer any evidence that the financial burden of litigating in Delaware would constitute a substantial, or even a considerable, financial distress. They do not give the Court any suggestion regarding their assets or

income. Instead, they generically say that litigation in Delaware would cause harm to their business and/or personal finances.

Moreover, as anticipated by the Tenth Circuit in *Peay,* much of the discovery and litigation of these actions will be conducted electronically and/or remotely. As such, the need for any of the Moving Defendants to ever have to travel to Delaware or for that matter, outside their home districts, is uncertain at most.

The Moving Defendants' complaints about a Delaware forum are even less significant when they are balanced against the forum's interest in adjudicating the dispute, an interest which is especially strong in bankruptcy cases, and the Trustee's interest in having this proceeding heard in the selected forum. The avoidance actions at issue arose in chapter 11 cases pending before this Court in Delaware. The Moving Defendants also erroneously argue that the Trustee's home forum is New Jersey. Although the Trustee is a resident of New Jersey, his role in this action is as the fiduciary for the Trust, which is a Delaware trust "governed by and constructed in accordance with the laws of the state of Delaware." (Case No. 08–12687, Doc. # 5775). Therefore, Delaware also has a substantial interest in the outcome of this litigation.

■■■■■ Congress has created a federal bankruptcy system which is designed to provide "one forum for adjudicating almost all disputes arising in or out of a particular case." *Schwinn Plan Comm. v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.),* 192 B.R. 461, 476 (Bankr.N.D.Ill.1996). Requiring the Trustee to litigate his fraudulent transfer claims in numerous other jurisdictions would run counter to the bankruptcy policy interests in administering the consolidated estate in a single forum. *See Fed. Fountain,* 165 F.3d at 602 ("[T]he vindication of federal law principles

in a federal court would seemingly always be sufficient to carry the day in favor of the exercise of federal jurisdiction.").

The Trustee has a strong interest in litigating this proceeding in this District. Although the Moving Defendants insist that the Trustee should be required to repeatedly litigate issues and facts common to all of the Moving Defendants in countless courts across the United States, fragmented litigation would needlessly require the Trustee to waste precious estate resources retaining local counsel in this litigation in multiple and far-flung jurisdictions.

The Moving Defendants assert that "[i]f this civil action is to proceed at all, it must proceed in the district which has jurisdiction over each of the [Moving] Defendants, as the exercise of jurisdiction there both preserves the Fifth Amendment's guarantee of fundamental fairness in court cases and fully satisfies the desire for efficiency." (Doc. # 142, at 10.) As noted above, the Defendants reside in thirty-three different states. The Complaint alleges that the subject transfers were effected by numerous Debtors who collectively engaged in a massive Ponzi scheme over a number of years. Of course, the Trustee will have to prove the insolvency of these consolidated Debtors—a task that I perceive will be complex and lengthy. If the Trustee can only proceed against the Defendants in their state of residence, then the Trustee will have to prove its insolvency case in thirty-three separate trials. Obviously, this would impose a serious, if not prohibitive, financial burden on the Trust.

As this Court has emphasized, a bankruptcy trustee's duty is to maximize the value of the estate:

> A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate,

that is, for the benefit of the creditors. To fulfill this duty, trustees and debtors in possession have a variety of statutorily created powers, known as avoidance powers, which enable them to recover property on behalf of the bankruptcy estate.

*In re DBSI, Inc.,* 451 B.R. at 378 (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.),* 226 F.3d 237, 243 (3d Cir. 2000)). Granting the relief requested by the Motion would only serve to diminish the value of the Trust's litigation portfolio at the expense of DBSI's allegedly defrauded creditors.

The Moving Defendants rely heavily on a 2007 unpublished Kansas District Court decision that held that the court did not have personal jurisdiction over a low-level employee who examined claims that were randomly assigned to him by his insurance company employer. Doc. 142, at 12–13 (citing *Talkin v. Deluxe Corp.,* Civ. A. No. 05–2305–CM 2007 WL 1469643 (D.Kan. May 18, 2007)). As this Court held in *In re DBSI, Inc.,* however, the *Talkin* decision "is factually inapposite." *Id.* at 377. In *Talkin,* the defendant was a low level employee, simply doing his job, and acting at the direction of his employer. 2007 WL 1469643, at *2–3. The defendant did not conduct the activities that gave rise to the litigation on his individual behalf. *Id.* In this case, the Trustee has alleged that the Defendants were earning commissions for their active role in assisting and abetting Debtor FOR 1031 LLC with the unlawful sale of unregistered securities as real estate. (Compl. ¶¶ 19–26.) In exchange for their participation in the Debtors' alleged fraudulent scheme, the Defendants collectively received in excess of $19 million in allegedly unlawful transfers from the Debtors. This is readily distinguishable from *Talkin,* where the defendant was acting at his employer's direction and the dismissal as to him merely allowed the litigation to proceed as to the employer, the proper party in interest. 2007 WL 1469643, at *3.

## Conclusion

For these foregoing reasons, the Moving Defendants' motion to dismiss the Complaint for lack of personal jurisdiction will be denied.

A number of other defendants have filed joinders to the Motion. These joinders are at Docs. ## 166, 167, 179, 275, and 293. Two of the joinders (Docs. ## 275 and 293) add nothing to the matters that have been considered here. Joinder # 166 has attached to it an affidavit but the affidavit is not signed. Joinders ## 167 and 179 have affidavits attached regarding the parties non contacts with Delaware. I do not consider that these two affidavits significantly support a holding contrary to that which I have reached here. Thus, the joinders will be deemed effectively addressed in this memorandum opinion and thus will likewise be deemed rejected.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the Motion of Certain Defendants to Dismiss for Lack of Personal Jurisdiction (Doc. # 141) is **denied.**