# In re ADELPHIA COMMUNICATIONS CORP. et al., Debtors.

**Gerald Dibbern, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**Adelphia Communications Corp., John Does 1–20 and XYZ Company Nos. 1–50, Defendants–Appellees.**

**No. 05 Civ.5374(DC).**
**Bankruptcy No. 02–41729(REG).**
**Adversary No. 02–8074(REG).**

United States District Court,
S.D. New York.

Aug. 30, 2005.

Law Offices of Stephen V. Saia, By: Stephen V. Saia, Pembroke, Massachusetts and Johnson & Perkinson, By: Jacob B. Perkinson, South Burlington, Vermont, for Plaintiff–Appellant.

Willkie Farr & Gallagher LLP, By: Brian E. O'Connor, Joanna Rotgers, New York, New York, for Defendants–Appellants.

### *MEMORANDUM DECISION*

CHIN, District Judge.

This is an appeal from a decision and order of the United States Bankruptcy Court for the Southern District of New York (Gerber, *B.J.*), dated May 3, 2005 (the "Order"), granting the motion of defendant-appellee Adelphia Communications Corporation ("Adelphia") to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons that

follow, the Order is affirmed in part and reversed in part.

## STATEMENT OF THE CASE

### A. *The Facts*

As alleged in the amended complaint, the facts are as follows:

Plaintiff-appellant Gerald Dibbern is a resident of Massachusetts. (Am. Compl. ¶ 9). In approximately 1996,[1] he contacted Harron Communications Corp. ("Harron") to obtain cable television service for his home. (*Id.* ¶ 79). He signed up for the "basic service tier" ("BST"), which consisted of basic service only, without any premium channels. He began renting two cable converter boxes, which were necessary to view even basic programming. (*Id.* ¶¶ 9, 79). To the extent Dibbern received any contract documents or installation materials or other documents at the time, he no longer has them. (*Id.* ¶ 80). Dibbern has been paying a rental fee for the converter boxes of between $1.60 and $3.25 per month per box. (*Id.* ¶ 16).

In April 1999, Adelphia announced that it was acquiring Harron. The transaction closed in October 1999. (*Id.* ¶ 21). The Harron acquisition added subscribers in Pennsylvania, Michigan, Massachusetts, and New Hampshire to Adelphia's customer base. (*Id.* ¶ 24).

At some point after the acquisition, as it had been doing with respect to its acquisitions of other cable systems, Adelphia upgraded the system it acquired from Harron. (*Id.* ¶¶ 20, 25, 28, 30). Previously, Harron's BST customers, including Dibbern, had to rent converter boxes to be able to view basic programming. (*Id.* ¶ 26). After the upgrade, however, BST customers no longer needed converter box-

es to view basic programming, if they had a cable-ready television or VCR (as most people do) and did not want to subscribe to premium channels or use pay-per-view services. (*Id.* ¶¶ 2, 28, 43).

Adelphia did not advise Dibbern or its other BST customers that the converter boxes were no longer required to view basic programming. Instead, Adelphia continued to charge monthly rental fees for the boxes, even though they were no longer necessary for BST customers who were not interested in viewing premium channels or pay-per-view programs. (*Id.* ¶¶ 3, 32, 35).

In May 2001, Adelphia finally advised its customers that they no longer needed to rent converter boxes for BST-only service. (*Id.* ¶ 36). The notice appeared on the May bill as follows:

EFFECTIVE IMMEDIATELY

CUSTOMERS WHO DO NOT SUBSCRIBE TO *ANALOG* PREMIUM CHANNELS (HBO, CINEMAX, SHOWTIME OR NESN), OR ENJOY ORDERING PAY–PER–VIEW, NO LONGER NEED A CONVERTER BOX, PROVIDED THAT THEIR TELEVISION IS *CABLE-READY*. CONVERTERS MAY BE RETURNED TO YOUR LOCAL ADELPHIA OFFICE.

(Order at 3–4 n. 4). A majority of the BST subscribers returned their cable boxes, and thus they were no longer subject to the cable box rental fee. (Am Compl. ¶ 37). A follow-up notice was included in the September 2001 bill, reminding BST customers that the converter boxes were

---

1. The amended complaint, which is dated November 15, 2002, alleges that Dibbern had been a customer of Adelphia or its predeces-

sors "for approximately six years." (Am. Compl. ¶ 9).

no longer necessary. (*Id.* ¶ 41; Order at 3–4 n. 4).

Adelphia is and was at all relevant times a Delaware corporation with its principal place of business in Pennsylvania. (Am. Compl.¶ 10). The amended complaint does not allege where Harron was incorporated or where its principal place of business was located.

## B. *Prior Proceedings*

On April 14, 2002, Dibbern filed an action in state court in Pennsylvania against Adelphia, raising the claims asserted herein. On June 25, 2002, for unrelated reasons, Adelphia and many of its subsidiaries filed for Chapter 11 protection. On July 8, 2002, Dibbern filed a "class" proof of claim in the Bankruptcy Court on behalf of a nationwide class of similarly situated subscribers, alleging that Adelphia had improperly billed him for the rental of the two converter boxes. Thereafter, Dibbern filed this adversary proceeding, as a nationwide class action.

The amended complaint asserts claims for: (1) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* (the "UTPCPL"); (2) breach of contract; (3) fraud; (4) unjust enrichment; (5) an accounting; and (6) a constructive trust. (Am.Compl.¶¶ 63–114).

Defendants moved to dismiss the amended complaint for failure to state a claim upon which relief may be granted, in accordance with Fed.R.Civ.P. 12(b)(6). The Bankruptcy Court (Gerber, *B.J.*) issued a decision and order on May 3, 2005, granting the motion to dismiss.

This appeal followed. The Court heard oral argument on August 26, 2005.

## DISCUSSION

I discuss the six claims of the amended complaint, in turn.

## A. *The UTPCPL*

Count I of the amended complaint alleges violations of the UTPCPL. It alleges that defendants knowingly and recklessly engaged in fraudulent conduct and unfair and deceptive trade practices by, among other things, failing to disclose that the upgrade converter boxes were no longer necessary for BST customers, resulting in subscribers paying monthly rental fees for converter boxes they did not need.

The bankruptcy court dismissed this claim on two grounds. First, it concluded that the statute was not intended to cover consumers, like Dibbern, who were not residents of Pennsylvania and did not obtain their goods or services in Pennsylvania. (Order at 14–15). Second, it concluded that even assuming Dibbern were protected by the UTPCPL, he had failed to state a claim under the statute on the merits.

■ I agree with the Bankruptcy Court that the UTPCPL does not protect a consumer, like Dibbern, who neither resides in nor obtains goods or services from Pennsylvania. I do not reach the second ground of the Bankruptcy Court's ruling as to this claim.

Section 3 of the UTPCPL, § 201–3, declares "unlawful" unfair or deceptive acts or practices "in the conduct of any trade or commerce." Section 9.2 of the statute, § 201–9.2, gives any person who is damaged by any such unlawful act or practice the right to sue for damages, including treble damages and attorneys' fees. Section 2(3), however, defines "trade" and "commerce" to mean:

the advertising, offering for sale, sale or distribution of any services and any

98

property . . . or thing of value wherever situate, and includes any trade or commerce directly or indirectly *affecting the people of this Commonwealth.*

UTPCPL § 201–2(3).

I agree with the Bankruptcy Court that the underscored words are dispositive. Clearly, the statute is intended to protect residents of, or individuals found within, the Commonwealth of Pennsylvania. The Bankruptcy Court thoroughly considered this issue and reviewed the relevant authorities, and I agree with its analysis. The phrase "the people of this Commonwealth" simply does not include a Massachusetts resident who obtained cable television service in Massachusetts.[2] The Order is affirmed to the extent that it dismissed the claim for violations of the UTPCPL.

## B. *Breach of Contract*

Count II of the amended complaint asserts a claim for breach of contract. It alleges that defendants were contractually obligated after the upgrade to advise Dibbern and other customers that converter boxes were no longer necessary and that their obligation to pay rental fees would terminate upon the return of the equipment. It further alleges that defendants breached this obligation by remaining silent until May 2001, when the first notice was given. The Bankruptcy Court dismissed the claim, concluding that the amended complaint failed to allege "the existence of contractual obligations" sufficient to support the claim. (Order at 30). The Bankruptcy Court concluded that "Dibbern does not allege that whatever contract existed required Adelphia to notify him with respect to upgrades and their impact on his need to rent equipment."

(*Id.*). Finally, the bankruptcy court rejected Dibbern's reliance on the implied covenant of good faith and fair dealing, holding that this was "too much bootstrapping. The requirement of good faith performance is circumscribed by the obligations in the contract." (*Id.* at 31).

I disagree with the Bankruptcy Court's conclusions in this respect. On a Rule 12(b)(6) motion to dismiss, the court must accept the factual allegations of the complaint to be true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Here, considering the issue *de novo* as I must, I cannot say that it is "beyond doubt" that Dibbern can prove no set of facts to show a breach of contract.

As a threshold matter, there clearly was a contract here—Harron agreed to provide cable services and equipment to Dibbern and Dibbern agreed to pay for those services and equipment from month to month. That contract continued for some six years. When the parties first entered into the contract, Harron's representatives surely must have said to Dibbern, in words or substance, "you will need a converter box and we will charge you a monthly fee to rent such a box." When Adelphia acquired Harron, it surely assumed Harron's obligations under the "contract."

In addition, although Dibbern apparently no longer has any of the paperwork,

2. Nor does the amended complaint allege that Dibbern obtained goods or services from defendants in Pennsylvania, nor does it allege that defendants made decisions or took actions within Pennsylvania that adversely affected Dibbern in Massachusetts.

surely there was some paperwork that set out the parties' rights and responsibilities, and it is possible, if not likely, that Adelphia can obtain copies or facsimiles of those documents. It is also possible, if not likely, that this documentation contained some representations as to the necessity for equipment. Even if the paperwork did not contain any such representations, I cannot say that it is "beyond doubt" that Dibbern will be unable to prove, from the totality of circumstances and any paperwork that may be found, that defendants were contractually obligated to advise him that he could return the equipment and be released from the obligation to pay rent if the equipment ever became unnecessary. (*See* Am. Compl. ¶ 85).

Finally, even in the absence of an express agreement, I conclude that Dibbern may be able to show that the implied covenant of good faith and fair dealing imposed an obligation on defendants to advise him when and if the converter boxes became unnecessary.[3] Although the Bankruptcy Court was of the view that "[t]he requirement of good faith performance is circumscribed by the obligations in the contract" (Order at 31), that conclusion is premature at this juncture of the litigation. Dibbern may very well be able to prove that the obligation to deal fairly and in good faith was not inconsistent with the terms of the "contract," and that defendants failed to deal fairly and in good faith when they waited months to tell Dibbern that he did not have to keep paying rent for equipment that was no longer needed. Accordingly, the Order is reversed to the extent it dismissed the breach of contract claim.

## C. *Fraud*

■ Count III of the amended complaint alleges fraud. It contends that defendants engaged in fraudulent and deceptive conduct by suppressing material facts and knowingly and recklessly failing to disclose to customers that they no longer needed to rent converter boxes. The Bankruptcy Court dismissed this claim, holding that Dibbern alleged only omissions, and that "an omission, in the absence of other statements which, by reason of the omission, become 'half truths' or otherwise deceptive, does not equate to a misrepresentation sufficient to satisfy Massachusetts law." (Order at 32) (footnote omitted). The Bankruptcy Court also held that the statements "in the May 2001 and September 2001 bills were not misrepresentative or misleading" and thus could not support a finding of fraud under Massachusetts law. (*Id.* at 32–33).

■ I hold that the Bankruptcy Court erred in dismissing the fraud claim. Under Massachusetts law, a fraud claim involving nondisclosure of a fact is actionable only when there is a duty to disclose. The Massachusetts courts have recognized a duty to disclose where:

> (i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.

*Stolzoff v. Waste Sys. Int'l, Inc.*, 58 Mass. App.Ct. 747, 792 N.E.2d 1031, 1044 (2003) (citing Restatement (Second) of Torts § 551 (1977)). A finder of fact could surely conclude that the third situation applies

---

**3.** *See Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 157 n. 3 (1st Cir.2005) ("Every contract contains an implied covenant of good faith and fair dealing."); *Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49, 61–62 (1st Cir.2001) ("Under Massachusetts law, every contract includes an implied duty of good faith and fair dealing.").

here. A finder of fact could surely conclude that the nondisclosed fact—the converter boxes were no longer necessary—went to the essence of the transaction—the rental of converter boxes to enable BST subscribers to view basic programming.

In addition, even assuming the notices on the May 2001 and September 2001 bills constituted adequate disclosures, they did not come until some time after the upgrade had been made and the boxes became unnecessary. Although the amended complaint is imprecise as to the timing, it alleges that the upgrade was made sometime between April and October 1999. In fact, it probably happened after the closing of the acquisition, but the amended complaint can be fairly read to allege that customers paid unnecessary rental fees for some months.

This aspect of the Order is reversed.

## D. *Unjust Enrichment*

Count IV asserts an unjust enrichment claim. The Bankruptcy Court dismissed this claim largely because it concluded the claim was a "reiteration" of the fraud claim. (Order at 33–34). For the reasons that I have reversed the Bankruptcy Court's dismissal of the fraud claim, the Bankruptcy Court's dismissal of the unjust enrichment claim is reversed as well. In addition, I do not agree that the unjust enrichment claim is just a "reiteration" of the fraud claim.

As the Bankruptcy Court noted, under Massachusetts law, an unjust enrichment claim requires proof of three elements: (i) plaintiff conferred a benefit on defendant; (ii) defendant knew that it received the benefit; and (iii) the circumstances are such that it would be inequitable for defendant to retain the benefit or not pay for it. (Order at 33) (citing *Dickens–Berry v. Greenery Rehab. & Skilled*

*Nursing Ctr.,* 1993 WL 818564, at *3 n. 6 (Mass.Super.Ct. Oct. 29, 1993)). Here, the amended complaint clearly alleges that plaintiff conferred a benefit (he paid monthly rental fees) on defendants and that defendants were aware of the benefit (they billed for and kept the rental fees). A reasonable factfinder could also conclude that it would be inequitable for Adelphia to retain the benefit—for months, customers paid for converter boxes that they did not need and Adelphia waited until May 2001 before so advising them and before telling them that their obligation to pay rent would come to an end if they returned the boxes.

The Bankruptcy Court's dismissal of Count IV is reversed as well.

## E. *Accounting and Constructive Trust*

Counts V and VI seek, respectively, an accounting and the imposition of a constructive trust. The Bankruptcy Court's dismissal of these claims is affirmed. First, Dibbern did not allege facts from which a factfinder could conclude that a fiduciary relationship existed between Dibbern and Harron (or Adelphia). This was a relationship between a subscriber and a utility (a provider of cable television services). This was not a relationship involving trust or confidence in the fiduciary sense. Second, in the context here, these are remedies and not claims. If Dibbern ultimately prevails, he will be entitled to damages and a damages calculation will have to be performed, but these "claims" are not independent causes of action.

## CONCLUSION

For the foregoing reasons, the Order is affirmed to the extent it dismissed Counts I, V, and VI and it is reversed to the extent it dismissed Counts II, III, and IV.

The case is remanded for further proceedings not inconsistent with this memorandum decision.

SO ORDERED.