In re UNI–MARTS, LLC, Debtor.

Charan Trading Corp. and Varni, LLC, Plaintiffs,

v.

Uni–Marts, LLC and Henry D. Sahakian, Defendants.

Bankruptcy No. 08–11037 (MFW). Adversary No. 08–51239 (MFW).

United States Bankruptcy Court, D. Delaware.

Jan. 12, 2009.

Eric M. Sutty, Mary E. Augustine, Bayard, P.A., Wilmington, DE, Charles J. Ferry, Robert J. Tribeck, Kathryn D. Sallie, Rhoads & Sinon LLP, Harrisburg, PA, for Henry D. Sahakian.

Robert J. Dehney, Thomas F. Driscoll III, Chad A. Fights, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, Tyler P. Brown, Michael G. Wilson, Jason W. Harbour, Henry P. Long, III, Hunton & Williams LLP, Richmond, VA, for debtor.

Warren T. Pratt, Drinker Biddle & Reath LLP, Wilmington, DE, for plaintiffs.

### MEMORANDUM OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Defendants' Motions to Dismiss the Com-

---

**1.** "The court is not required to state findings or conclusions when ruling on a motion un- der Rule 12...." Fed. R. Bankr.P. 7052(a)(3). Accordingly, the Court herein makes no find-

plaint filed by Charan Trading Corp. and Varni, LLC (the "Plaintiffs"). For the reasons set forth below, the Court will grant Defendant Sahakian's Motion and deny Defendant Uni–Marts' Motion.

## I. FACTUAL BACKGROUND

Uni–Marts, LLC (the "Debtor") operates a chain of company-owned and franchise-operated convenience stores throughout the northeastern United States. Defendant Henry D. Sahakian ("Sahakian") is the president and a manager of the Debtor. The Debtor, and a number of its subsidiaries,[2] filed chapter 11 petitions on May 29, 2008.

In late 2004, prior to its chapter 11 filing, the Debtor offered for sale a number of its company-owned stores. The Plaintiffs expressed interest in a store located in Wilkes–Barre, Pennsylvania (the "Store") and received a Property Specific Package ("PSP") which contained relevant financial information. Subsequently, the Plaintiff Charan Trading Corp. ("Charan") executed a Purchase and Sale agreement dated December 30, 2004.

Prior to the sale closing, the Debtor provided a Financial Information Update purporting to reflect the "actual operating results" for calendar year 2004. On April 5, 2005, the sale to Charan closed and it acquired the operating assets of the Store. Charan also entered into a Trademark License Agreement, Fuel Supply Agreement, Commodity Schedule, and Collateral Deposit Agreement (collectively, the "Contracts") with the Debtor. Plaintiff Varni, LLC ("Varni") acquired the Store's real property on July 7, 2005.

On August 14, 2008, the Plaintiffs filed the instant adversary proceeding alleging that the Debtor and Sahakian induced the Plaintiffs to purchase the Store and enter into the Contracts through either fraud or negligent misrepresentation. The Plaintiffs seek rescission of the Contracts, damages from Sahakian, and a declaration that the proceeds of the Debtor's Director and Officer insurance policy ("D & O policy") covering liability for Sahakian's allegedly tortious actions is not property of the estate.

On October 3, 2008, Sahakian filed a Motion to Dismiss the Complaint. On October 15, 2008, the Debtor filed a Motion to Dismiss the Complaint. The Plaintiffs oppose both Motions. The issues have been fully briefed and are ripe for decision.

## II. JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(A) & (c)(1).

## III. DISCUSSION

Sahakian moves for dismissal of the claims against him under Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Sahakian argues that this Court lacks personal jurisdiction over him and that the Complaint fails to state any claim against him. He further asserts that the Court should dismiss the claims because they were filed beyond the statute of limitations. Finally, Sahakian argues that the Court, utilizing its powers under section

---

ings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**2.** The debtors in the underlying, jointly-administered bankruptcy case are Uni Realty of Wilkes–Barre, Inc., Uni–Marts Ohio, LLC, Uni Realty of Wilkes–Barre, L.P., Uni Realty of Luzerne, Inc., Uni Realty of Luzerne, L.P., and Green Valley National Accounts, LLC.

105(a), should extend the automatic stay under section 362(a) to Sahakian and dismiss the Complaint.

The Debtor also moves for dismissal of the claims against it, because it asserts that the action was filed outside the statute of limitations. Furthermore, the Debtor argues that this action is a violation of the automatic stay under section 362(a) and should be dismissed.

## A. *Personal Jurisdiction*

Sahakian moves to dismiss the Complaint against him for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2).

### 1. *Standard on Rule 12(b)(2) Motion to Dismiss*

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and ... is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir.2004). The Court held no evidentiary hearing on the motion to dismiss. Thus, it will base its decision on the allegations in the Plaintiffs' Complaint.

### 2. *Personal Jurisdiction in Bankruptcy Court*

Bankruptcy Rule 7004(f) provides that:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr.P. 7004(f).

■ Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure generally limits *in personam* jurisdiction of the federal courts over non-resident defendants to that which a court of general jurisdiction in the forum state would have. However, this limitation does not apply where extra-territorial service of process is "authorized by a federal statute." Fed.R.Civ.P. 4(k)(1)(C). Bankruptcy Rule 7004(d), which allows nationwide service of process in bankruptcy cases, is just such a statute. *Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.),* 835 F.2d 1341, 1344 (11th Cir.1988) ("Bankruptcy Rule 7004(d) provides for nationwide service of process and thus is the statutory basis for personal jurisdiction in this case ...."), *rev'd on other grounds,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

■ The Fifth Amendment Due Process Clause does circumscribe *in personam* jurisdiction of the federal courts. *Id.* It imposes "a general fairness test incorporating *International Shoe*'s requirement that certain minimum contacts exist between the non-resident defendant and the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 293 (3d Cir.1985) (quotations omitted) (*citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ However, in bankruptcy cases "the forum" is the United States in general, not the particular forum state. *Klingher v. SALCI (In re Tandycrafts, Inc.),* 317 B.R. 287, 289 (Bankr.D.Del.2004). Accordingly, the Court will apply a "national contacts" standard, and not merely a "Delaware con-

tacts" standard, in determining whether the Court's exercise of personal jurisdiction over Sahakian is proper.

### 3. Sahakian's Minimum Contacts

Where a non-resident defendant "purposefully directed his activities at residents of the forum," his contacts with the forum are sufficient to support personal jurisdiction in any "litigation [that] results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted). A single transaction with the forum by the plaintiff will suffice. *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The defendant's activity need not take place within the forum so long as it is "intentional conduct . . . calculated to cause injury" to the plaintiff within the forum. *Calder v. Jones,* 465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *See also Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction. . . ."). However, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In this case, the Plaintiffs' Complaint alleges that "Defendant Uni–Marts, LLC . . . is the debtor in this bankruptcy case," (Compl. ¶ 3), and "Defendant Henry D. Sahakian is president of and a manager of the Debtor." (Compl. ¶ 4.) Substantively, the Plaintiffs allege that "Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan, in procuring and breaching the Contracts and tortiously inducing plaintiffs and their principals to purchase the Store." (Compl. ¶ 31.)

Because the Plaintiffs' Complaint contains no allegations regarding Sahakian's residence or domicile, Sahakian's minimum contacts must be analyzed as if he were a non-resident of the forum.[3] Here, the Plaintiffs allege that Sahakian "purposefully directed his activities" at the Plaintiffs, who reside in the forum, and that the current suit "arise[s] out of or relate[s] to those activities." *See Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. The essence of the Plaintiffs' Complaint is that the Debtor provided false and misleading financial statements to the Plaintiffs, which they relied upon in purchasing the Store, located in Pennsylvania, from the Debtor. (Compl. ¶¶ 17–21.) Specifically, the Plaintiffs allege that certain sales documents failed to disclose key operating costs and reported artificially inflated sales figures in an effort to make the property appear more attractive, thus inflating the sale price. (*Id.*) The Plaintiffs allege that Sahakian "directed" this activity and "provided substantial assistance to" the Debtor in perpetrating the fraud. (*Id.* ¶ 31.)

While merely entering into a contract with a forum resident may not alone establish minimum contacts, the "real object of

---

**3.** The Plaintiffs argue in their brief that Sahakian is a resident of the United States. In support of this, the Plaintiffs cite to Sahakian's biographical entry from Wikipedia and the Debtor's Statement of Financial Affairs, which reflects a mailing address for Sahakian in State College, Pennsylvania. However, the mailing address listed on the Schedules is a post office box, which is insufficient to establish Sahakian is a resident of the United States. Furthermore, the Wikipedia entry is not of record in this case and is probably not admissible as evidence. *See* Fed.R.Evid. 802.

the business transaction" including the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may establish minimum contacts. *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174. Here, Sahakian allegedly had extensive contacts with the United States in order to effectuate the sale of the Store and remained engaged through the executory Contracts related to the sale. The Plaintiffs allege that they received fraudulent store-specific profit and loss information in late 2004, at the direction of Sahakian. Later, in March 2005, the Plaintiffs contend that Sahakian directed the Debtor to provide updated financial information which fraudulently reported actual operating results from 2004. Since the sale closing, the Plaintiffs allege that Sahakian has directed the Debtor to "repeatedly and materially breach[ ] its Contracts ... by overcharging for fuel, failing to deliver fuel as required, and failing to pay or account for credits, discounts, rebates and other sums." (Compl. ¶ 25.) Therefore, even if Sahakian was directing this activity from outside the United States, the Plaintiffs allege that he directed tortious activities at the Plaintiffs inside the United States.

Taking the Plaintiffs' allegations as true, the Court concludes that they are sufficient to establish that Sahakian had minimum contacts with the forum. Thus, the Court concludes that the Plaintiffs have established that the Court has personal jurisdiction over Sahakian with respect to the claims raised in the Complaint. *See Burger King,* 471 U.S. at 472, 105 S.Ct. 2174.

### 4. *Fair Play and Substantial Justice*

The exercise of personal jurisdiction must also comport with "traditional notions of fair play and substantial justice." *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir.1993). *See also Asahi Metal Indus. Co. Ltd. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

Because the Plaintiffs have made a prima facie case of minimum contacts, the burden shifts to Sahakian to "present a compelling case that the presence of some other consideration should render jurisdiction unreasonable." *Id.* (quotations omitted).

[T]he Court must consider the following factors: (1) the burden on [Sahakian] of litigating in the United States; (2) the interest of the United States in adjudicating the dispute; (3) the Plaintiff[s'] interest in obtaining the relief sought; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust),* 335 B.R. 309, 321 (Bankr.D.Del. 2005).

Sahakian first argues that he "will be burdened unreasonably by having to defend Plaintiffs' lawsuit in Delaware [that he] could not have reasonably anticipated being hailed [sic] before a Delaware bankruptcy court to adjudicate tort claims originating in Pennsylvania." Sahakian's argument fails to recognize that the relevant forum is the United States. He argues

that it is unreasonable to litigate this suit in Delaware, but perfectly reasonable to litigate in Pennsylvania. The inquiry, however, is whether it is burdensome to litigate in the United States as a whole. Sahakian has failed to demonstrate why litigation in the United States would be burdensome.

Sahakian next argues that "regardless whether the forum is the United States or Delaware, neither has a genuine interest in adjudicating ... a garden variety state tort law action between two non-debtors." This argument is similarly misplaced. The Debtor is a named party to the suit and its potential liability for indemnification of Sahakian may impact the Debtor's estate. The United States has an interest in the efficient and orderly administration of the Debtor's estate. Adjudication of state law claims brought by a resident of the forum against a non-resident does not, by itself, offend traditional notions of fair play and substantial justice.

Finally, Sahakian argues that although the Plaintiffs have an interest in obtaining relief, they "have not shown that relief is available only in this Court as opposed to ... a Pennsylvania court." Sahakian cites no support for this novel proposition. Again, the forum at issue is the United States, not the state of Delaware. A plaintiff frequently has a choice of forum and venue in litigation. Due process does not require a showing that a plaintiff is unable to seek relief in the universe of other available forums to permit a plaintiff to proceed in its chosen forum. It only requires that the exercise of jurisdiction by the chosen forum will not "offend traditional notions of fair play and substantial justice."

Sahakian has failed to carry his burden of establishing that the exercise of jurisdiction over him by this Court "offends traditional notions of fair play and substantial

justice." Therefore, the Court will deny Sahakian's motion to dismiss for lack of personal jurisdiction.

B. *Sahakian's Motion to Dismiss for Failure to State a Claim*

Sahakian also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

1. *Rule 12(b)(6) Standard of Review*

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in a plaintiff's complaint. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993).

"In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir.2004). *See also Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (stating that the Supreme Court in *Twombly* "also reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits"). All reasonable inferences are drawn in favor of the plaintiff. *Kost,* 1 F.3d at 183. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by, Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See also Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d Cir.2000); *Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC),* 321 B.R. 128, 134 (Bankr.D.Del.2005)

("Granting a motion to dismiss is a 'disfavored' practice . . . .").

### 2. Rule 8(a) Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement must provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964–65 (citations omitted). "Put another way . . . Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. . . . [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (*citing Twombly*, 127 S.Ct. at 1965 n. 3).

### 3. Failure to State a Claim

The Plaintiffs assert that the Complaint states a cause of action against Sahakian under (1) the participation theory of liability for corporate officers and/or (2) a concerted tortious conduct theory.

#### a. Participation Theory

A corporation is a legal entity, acting through its agents. The corporate entity itself is "accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business."

*Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 854 (Bankr.D.Del.1994). In addition, corporate officers and directors may be held accountable personally for their tortious conduct. *Loeffler v. McShane*, 372 Pa.Super. 442, 539 A.2d 876, 878 (1988). The Pennsylvania Supreme Court has recognized the participation theory of liability:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.
>
> Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance . . . [but] may not be held liable for mere nonfeasance.

*Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86, 90 (1983) (citations omitted).

The Plaintiffs allege in the Complaint that the Debtor fraudulently or through negligent misrepresentation induced the Plaintiffs to purchase the Store and execute the Contracts with the Debtor. (Compl. ¶¶ 28, 31.) In support of their claim, the Plaintiffs aver that:

- The Plaintiffs signed a Purchase and Sale agreement for the Store "in reliance on a Property Specific Package ('PSP') . . . prepared and provided by *the Debtor* concerning the Store." (*Id.* ¶ 9.)

- "The Purchase and Sale Agreement ... sets forth the *Debtor's representation* that 'To the best of Seller's knowledge, the store-level profit and loss information made available by Seller to Purchaser is true and correct in all material respects.' " (*Id.* ¶ 10.)
- "[T]he *Debtor provided* 'Financial Update Information' concerning the Store ... which purports to show 'actual operating results' for calendar year 2004." (*Id.* ¶ 11.)
- "Thereafter, in reliance on the PSP and the Financial Update Information, plaintiffs purchased the Store." (*Id.* ¶ 12.)
- "In connection with the closing, Charan entered into certain written contracts with the *Debtor.*" (*Id.* ¶ 14.)
- "The store-level profit and loss information *provided by the Debtor* concerning the Store contained material misrepresentations and omitted material facts and was materially false and misleading." (*Id.* ¶ 17.)
- "In particular, the financial information included in the PSP omitted important operating costs such as manager's salary, health and workers' compensation insurance expenses, various taxes, maintenance costs, and other expenses." (*Id.* ¶ 18.)
- "The *Debtor's* internal 2005 Calendar Year Budget for the Store ... reveals some of these important operating costs, which had been omitted from the PSP." (*Id.* ¶ 19.)
- "In addition, the PSP and Financial Information Update falsely reported artificially inflated 2004 sales volumes for the Store. Upon information and belief, the *Debtor* boosted sales by selling fuel at lower margins than represented; and sales actually made in January 2005 were improperly included in the sales figures reported for December 2004." (*Id.* ¶ 20.)

(Compl., emphasis added).

The Plaintiffs presented sufficient factual allegations to support the underlying tort claim against the Debtor. However, the issue raised by Sahakian's motion to dismiss is whether the Plaintiffs have properly supported their claim against him.

In Count II of the Complaint, the Plaintiffs allege that:

31. Mr. Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan, in procuring and breaching the Contracts and tortiously inducing plaintiffs and their principals to purchase the Store.

32. As a proximate result, plaintiffs have suffered substantial monetary damages for which Mr. Sahakian is personally liable to plaintiffs.

(Compl. ¶¶ 31–32.) The only other factual allegations which mention Sahakian, directly or indirectly, are the following:

- "Sahakian is president of and a manager of the Debtor." (Compl. ¶ 4.)
- "The defendants knew or should have known that the profit and loss information provided by the Debtor concerning the Store was materially incomplete, false, and misleading." (*Id.* ¶ 23.)
- "The defendants knew or should have known that purchasers such as plaintiffs and their principals would rely to their detriment on the Debtor's misrepresentations." (*Id.* ¶ 24.)

It appears from the Complaint that other officers (not Sahakian) executed the docu-

ments relevant to the sale of the Store and the Contracts. (Compl., Exs. A–F.)

In their brief, however, the Plaintiffs argue that Sahakian "participated" in the tortious conduct allegedly perpetrated by the Debtor simply by having knowledge of the tortious activities. The Court disagrees. "[A]n officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable ... *unless he specifically directed the particular act to be done or participated or cooperated therein....* [C]orporate officers and directors may not be held liable for mere nonfeasance." *Wicks,* 470 A.2d at 90 (emphasis added).

In this case, the Plaintiffs have failed to allege any facts suggesting that Sahakian actually participated in the Debtor's alleged tortious activities. Instead, the Plaintiffs merely assert that Sahakian knew of the Debtor's tortious conduct in selling the Store to the Plaintiffs. Mere knowledge of the Debtor's activities, without some affirmative act of participation is insufficient to state a claim under the participation theory of liability. *See Wolf Designs, Inc. v. DHR & Co.,* 322 F.Supp.2d 1065, 1072 (C.D.Cal.2004) ("mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable ... absent other 'unreasonable participation'"). *Cf. Wicks,* 470 A.2d at 90 (denying motion to dismiss in action to hold directors of land developer liable for selling plaintiffs houses in a basin that floods where complaint alleged the officers "actually knew that the location of [the development] created ... an unreasonable risk of the drainage problems which occurred and that ... they deliberately ordered the work to proceed.").

The Plaintiffs argue, nonetheless, that Sahakian's position as president of the Debtor is sufficient to support the claim that Sahakian "directed and participated"

in the Debtor's tortious conduct. According to the Plaintiffs, the allegations that (1) Sahakian is the president of the Debtor and (2) Sahakian "directed and participated" in the Debtor's tortious activities is sufficient to survive a motion to dismiss. The Plaintiffs cite no authority to support such a novel proposition. The Supreme Court's recent decision in *Twombly* specifically repudiates exactly this type of pleading:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' *requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.*

*Twombly,* 127 S.Ct. at 1964–65 (emphasis added).

The Plaintiffs respond by noting that "[i]t is entirely plausible that the president of Uni–Marts 'directed' the activities of that entity." Certainly this is true; it is always conceivable a corporate officer with the authority to manage and direct all the activities of the corporation may have directed a certain subset of the corporate activities. Missing from the Complaint, however, are any alleged facts that Sahakian *actually* exercised this authority and directed the Debtor to provide misleading financial information to the Plaintiffs. The participation theory of liability does not hold that *all* corporate officers are liable for *all* tortious acts of the corporation; instead an officer is liable only for those he personally directed. *Chester–Cambridge Bank & Trust Co. v. Rhodes,* 346 Pa. 427, 31 A.2d 128, 131 (1943).

The Plaintiffs have failed to allege any facts establishing that Sahakian was personally involved in the Debtor's alleged fraud and misrepresentation in their pur-

chase of the Store. "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [the cause of action] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 127 S.Ct. at 1966. Accordingly, the allegations must plausibly suggest that *the defendant* engaged in the alleged conduct. The Plaintiffs' allegations in the Complaint are so vague and broad that they could easily apply to every director and officer in the corporation. The Court concludes, therefore, that the Plaintiffs' allegations do not possess the requisite heft to state a claim against Sahakian under the participation theory.

### b. *Concerted Action*

■ Pennsylvania also recognizes a tort for concert of action. *Koken v. Steinberg*, 825 A.2d 723, 731 (Pa.Cmwlth.2003). The Restatement (Second) of Torts explains this theory:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (2008).

■ The Plaintiffs allege that Sahakian "knew or should have known that the profit and loss information provided by the Debtor concerning the Store was materially incomplete, false, and misleading" and that the Plaintiffs would rely to their detriment on the misrepresentations. (Compl. ¶¶ 23–24.) Further, the Plaintiffs' Complaint alleges that "Sahakian ... provided substantial assistance to the Debtor and others." (Compl. ¶ 31.) Accordingly, the Plaintiffs argue that they have properly pled a cause of action under the Restatement (Second) of Torts, section 876(b), which requires both knowledge of the other actor's breach of duty and substantial assistance or encouragement.

■ The Plaintiffs, however, provide no factual allegations to support this conclusory statement. "*Twombly* requires that a complaint contain more than just conclusory reiterations of the statutory basis for a claim. The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim." *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, 2008 WL 4239120, at *4 (Bankr.D.Del.2008). Accordingly, the Court finds that the Plaintiffs have failed to state a claim under section 876(b).

The Plaintiffs also allege that Sahakian acted tortiously "pursuant to a common plan" which they argue states a claim under section 876(a). (Compl. ¶ 31.) Once again, however, the Complaint fails to contain any supporting facts beyond this conclusory allegation. Under *Twombly*, without more, the cause of action fails to state a claim.

Therefore, the Court concludes that the Complaint contains insufficient factual allegations, with respect to Sahakian, to state a claim for concerted tortious activity under either section 876(a) or (b) of the Restatement (Second) of Torts. Accordingly, the motion to dismiss Count II will be granted. This dismissal is without prejudice to the Plaintiffs filing within 30

days an amended complaint which adequately pleads facts to support their claim.

### C. Statute of Limitations

 The Debtor and Sahakian both move to dismiss the Complaint for failure to bring the action within the time allowed by the statute of limitations. In Pennsylvania,[4] the statute of limitations for tort claims is two years. 42 Pa. Cons.Stat. Ann. § 5524(7) ("The following actions and proceedings must be commenced within two years ... [a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud").

The discovery rule, however, provides an exception to the two-year statute of limitations for fraud. "[U]nder Pennsylvania law, when the underlying cause of action sounds in fraud, the discovery rule tolls the statute of limitations 'until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim.'" *Roberson v. Cityscape Corp. (In re Roberson)*, 262 B.R. 312, 323 (Bankr.E.D.Pa.2001) (quoting

*Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 148 (3d Cir.1997)).

 The Federal Rules of Civil Procedure contemplate that the determination whether a claim is time-barred under the statute of limitations will typically be made after it is raised as an affirmative defense in the answer. *See* Fed.R.Civ.P. 8(c)(1). Nonetheless, a claim may be dismissed under Rule 12(b)(6) if "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994). *See also Davis v. Grusemeyer*, 996 F.2d 617, 623 n. 10 (3d Cir.1993), *abrogated on other grounds by, Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) ("We are mindful that the applicability of the statute of limitations usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, 'defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'" (quoting *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir.1985))); *Giusto v. Ashland*

---

4. In deciding which state laws are applicable in the dispute, this Court applies the choice of law rules of the forum state. *Pickett v. Integrated Health Servs., Inc. (In re Integrated Health Servs.)*, 304 B.R. 101, 106 (Bankr. D.Del.2004), *aff'd*, 233 Fed.Appx. 115 (3d Cir. 2007). Delaware courts apply the "most significant relationship test" as outlined in the Restatement (Second) of Conflict of Laws. *Id.* (*citing Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1255–56 (Del.Super.Ct.2001)). In a tort action, the "most significant relationship test" identifies which state has the most interest in a particular tort claim by analyzing the following factors: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

and (d) the place where the relationship, if any, between the parties is centered. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (*quoting* Restatement (Second) of Conflict of Laws § 145(2)). Here, Pennsylvania has the most significant relationship to the Plaintiffs' claim against Sahakian. The injury and the conduct causing the injury occurred in Pennsylvania. The Store is located in Pennsylvania. The Plaintiffs and the Debtor are Pennsylvania corporations and Sahakian is the president and a manager of the Debtor. The relationship between the Plaintiffs, Sahakian, and the Debtor concerns the sale of the Pennsylvania Store and the Contracts related to the operation of the Store. Therefore, the Court concludes that Pennsylvania law applies.

*Chem. Co.,* 994 F.Supp. 587, 594 (E.D.Pa. 1998) ("Thus, a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations period." (quotations omitted)); *Stanziale v. Nachtomi (In re Tower Air, Inc.),* 416 F.3d 229, 242 (3d Cir.2005) (noting that "affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)").

■■■ In this case, the sale of the Store's operating assets closed on April 5, 2005. (Compl. ¶ 13.) The sale of the real property closed on July 7, 2005. (*Id.* ¶ 15). The instant adversary proceeding was filed on August 14, 2008. The Plaintiffs' cause of action is based on alleged false financial information provided by the Debtor and Sahakian, which induced the Plaintiffs to purchase the Store. According to the discovery rule, the statute of limitations begins to run once "the plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury." *Giusto,* 994 F.Supp. at 594.

The Debtor and Sahakian argue that, as a matter of law, the Plaintiffs either discovered, or should have discovered, their claim in the thirteen-month period between the closing of the real estate sale on July 7, 2005, and two years prior to the filing of the Complaint, August 14, 2006. In other words, the Defendants argue that there is no plausible explanation for why it took the Plaintiffs more than a year (during which time they operated the Store) to discover that the financial information provided by the Debtor was incorrect.

The Court disagrees with the Defendants' argument. The Complaint does not suggest, on its face, that the claim was brought outside the statutory period. The Complaint does not mention when the Plaintiffs discovered the existence of the claim. Nor does the Complaint contain sufficient facts to make a determination, as a matter of law, when the Plaintiffs, through the exercise of reasonable diligence, should have discovered the existence of the claim. Accordingly, it is inappropriate at this stage of the proceedings to dismiss the complaint as time-barred. *See Roberson,* 262 B.R. at 323 (declining to dismiss complaint as time-barred since complaint did not contain sufficient facts to permit the court to determine when plaintiff discovered, or should have discovered, existence of claim); *Giusto,* 994 F.Supp. at 594 (same).

Accordingly, the Court will deny the Debtor's and Sahakian's motion to dismiss the Complaint for failure to bring the action within the time allowed by the statute of limitations.

### D. *Automatic Stay*

Both the Debtor and Sahakian seek to dismiss the action because, they assert, it is barred by the automatic stay. Specifically, the Debtor argues that the action against it is directly barred by the automatic stay. Sahakian, as a non-debtor not protected by the stay, asks the Court to extend the stay to him and accordingly to dismiss the claims against him.

#### 1. *Action against Sahakian*

■■■ In general, only the debtor is afforded the protections of the automatic stay under section 362; conversely, third-parties do not receive the protection of the automatic stay. *Ochs v. Lipson (In re First Cent. Fin. Corp.),* 238 B.R. 9, 18 (Bankr.E.D.N.Y.1999). "As a consequence, it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." *McCartney v. Integra Nat'l Bank N.,* 106 F.3d 506, 509–510

(3d Cir.1997) (citations and quotations omitted).

■ Nevertheless, courts may extend the automatic stay to non-debtor third-parties if "unusual circumstances" are present. *Id.* at 510. The Fourth Circuit, in the seminal case on the issue explained:

> [t]his "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

*A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

■ Sahakian argues three "unusual circumstances" exist in this case, which warrant extending the automatic stay to him. First, Sahakian argues that the Debtor must indemnify him for any monetary damages he incurs in this suit and that a judgment against him is, in effect, a judgment against the Debtor. Second, Sahakian argues that he is integral to the Debtor's reorganization efforts and that the time demands of the suit will hinder the Debtor's reorganization. Finally, Sahakian asserts that any findings in the suit may bind the Debtor through collateral estoppel. The Court finds these circumstances are not sufficiently "unusual" to justify an extension of the stay to Sahakian.

It is true that the Court in *A.H. Robins* noted an "illustration" of unusual circumstances warranting extension of the stay is "a suit against a third-party who is entitled to absolute indemnity by the debtor." *Id.* *See also, Am. Film Techs.,* 175 B.R. at 853 (extending the automatic stay to non-debtor directors and officers in part because "there is an entitlement to indemnification between the debtor and its officers and directors"); *Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.),* 111 B.R. 423, 435 (Bankr.S.D.N.Y.1990), *aff'd,* 124 B.R. 635 (S.D.N.Y.1991) (finding the chairman of the board of directors' indemnification rights intertwined his interests with those of the debtor, creating a situation where the debtor was the real party in interest).

Yet the purpose served by extending the stay to directors and officers indemnified by the debtor must be consistent with the purpose of the stay itself, to "suspend actions that pose a serious threat to a corporate debtor's reorganization efforts." *First Cent.,* 238 B.R. at 19. *See also Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.),* 115 Fed.Appx. 565, 570 (3d Cir. 2004) (not precedential) ("Rather, courts employ a broader view of the potential impact on the debtor. The standard for the grant of a stay is generally whether the litigation could interfere with the reorganization of the debtor." (citations and quotations omitted)).

> The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization. The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtor needs the services of non-debtors facing crushing litigation). The question is whether the action against the non-debtor is sufficiently likely to have a "material effect upon ... reorganization effort[s]," that debtor protection requires an exception to the usual limited scope of the stay.

*Gray v. Hirsch,* 230 B.R. 239, 243 (S.D.N.Y.1999) (*quoting CAE Indus. Ltd. v. Aerospace Holdings Co.,* 116 B.R. 31, 34 (S.D.N.Y.1990)).

Here, under the Debtor's Charter, the Debtor is required to indemnify Sahakian

for any losses related to actions taken in his official capacity. Hypothetically, the Plaintiffs' suit against Sahakian could result in losses to the estate. However, the Debtor maintains a D & O policy to cover losses of this type. The proceeds of said policy may not actually be part of the estate. *See First Cent.,* 238 B.R. at 17 (" '[D & O] insurance *policies* are property of the estate ..., but the question of whether the *proceeds* are property of the estate must be analyzed in light of the facts of each case.' " (*quoting In re Sfuzzi, Inc.,* 191 B.R. 664, 668 (Bankr.N.D.Tex. 1996))). Given the relatively modest size of the potential recovery in this adversary proceeding in relation to the limits on the Debtor's D & O policy (and the fact that any claim against the Debtor would be a pre-petition claim), it is difficult to see how the Debtor would sustain any loss, much less one that would materially impair its reorganization.

■ Sahakian's argument that the time demands of the suit will hinder his ability to assist the Debtor in its reorganization efforts is also unconvincing. Certainly, diverting critical management resources from the reorganization effort to litigation may constitute "unusual circumstances" to justify extending the stay. *See Ionosphere Clubs,* 111 B.R. at 435; *Johns–Manville Corp. v. Asbestos Lit. Group (In re Johns–Manville Corp.),* 26 B.R. 420, 426 (Bankr. S.D.N.Y.1983) ("The massive drain on [key personnel's] time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization.")

■ In this case, however, the Debtor's chapter 11 case is small and relatively straightforward, unlike cases such as *Johns–Manville* or *A.H. Robins,* which involved many thousands of tort cases. This

case is not even a large or complex business reorganization. The limited scope of this adversary action is unlikely to consume significant portions of Sahakian's time or energy. Therefore, the time pressures of this suit do not constitute "unusual circumstances" to justify extension of the automatic stay to Sahakian.

■ Finally, Sahakian argues that a finding of liability against him may have a preclusive effect in a later proceeding against the Debtor. Thus, he asserts that the Debtor will be prejudiced if the adversary proceeding continues, effectively destroying the protections of the automatic stay. Some courts have found collateral estoppel concerns may justify extending the automatic stay to non-debtors. *See Am. Film Techs.,* 175 B.R. at 848 (extending the automatic stay to enjoin the prosecution of a California state court action against non-debtor directors and officers of the debtor due to collateral estoppel); *Ionosphere Clubs,* 111 B.R. at 435 ("a finding of liability as to [the] codefendants may be extended to [the Debtor], and collateral estoppel may bar [the Debtor] from litigating factual and legal issues critical to its defense"). *But see In re W.R. Grace & Co.,* 115 Fed.Appx. at 569 n. 4 (not precedential) (noting that it is "at least unclear" as to whether collateral estoppel may impact a debtor based upon suits against non-debtor directors and officers).

In this case, the Court need not decide whether a judgment against Sahakian could have a preclusive effect against the Debtor in some future proceeding. Here, the Debtor is a party to the action already. Furthermore, the action against the Debtor for rescission is premised on the same legal and factual bases as the claims against Sahakian. Because the Court concludes below that the action against the Debtor can proceed, the Court finds that there is no basis to extend the automatic

stay to Sahakian. Accordingly, the Court will deny Sahakian's motion to dismiss the Complaint on this basis.

### 2. *Actions against the Debtor*

Section 362(a) of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . or to recover a claim against the debtor that arose before the commencement of the case . . . [or] any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a). " 'The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors.' " *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 696 (3d Cir.1989) (*quoting* Bankruptcy Reform Act of 1978, S.Rep. No. 95–989, at 54, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840).

 In this case, the Plaintiffs seek rescission or cancellation of the pre-petition executory Contracts with the Debtor and a judicial determination that the proceeds of the Debtor's D & O insurance policy covering the claims against Sahakian are not property of the estate. (Compl. ¶¶ 29, 35.) The Debtor argues that these actions violate the automatic stay and should be dismissed.

Although the language of section 362(a) suggests that the automatic stay operates against all proceedings, the majority of courts hold that "the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay." *Nat'l City Bank of Minneapolis v. Lapides (In re Transcolor*

*Corp.)*, 296 B.R. 343, 358 (Bankr.D.Md. 2003). *See also Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods, Inc.)*, 12 F.3d 875, 878 (9th Cir.1993) ("the automatic stay [is] inapplicable to a suit commenced in the same court where the bankruptcy was pending"); *Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*, 135 B.R. 641, 644 (9th Cir. BAP 1992) ("we conclude that the automatic stay does not apply to proceedings against the debtor in home bankruptcy court"); *Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 325 B.R. 89, 97 (Bankr. S.D.N.Y.2005), *rev'd on other grounds*, 331 B.R. 93 (S.D.N.Y.2005) ("because [Plaintiff] sued on his prepetition claims in *this* Court, his assertion of those claims here was not violative of the automatic stay provisions of Bankruptcy Code sections 362(a)(1) and (a)(3), as would have been the case if those claims had been asserted elsewhere"); *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 940 (S.D.N.Y. 1991) (holding that the filing of an adversary proceeding is "equivalent to the filing of claims against the estate and allowable under 11 U.S.C. § 501, despite the automatic stay"). *But see Healy/Mellon–Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.)*, 100 B.R. 177, 178 (Bankr.D.Del.1989) ("[Plaintiff] has a claim based on a state-law contract. . . . It is the typical case which cannot be filed subsequent to a bankruptcy filing absent relief from stay for cause.").

The Court agrees with the reasoning of the majority of courts to address the issue that the filing of an adversary proceeding against a debtor in its bankruptcy case can be equivalent to the filing of a proof of claim and, therefore, does not violate the automatic stay. Consequently, the Court concludes that the Plaintiffs' filing of the instant adversary proceeding in this Court

is not a violation of the automatic stay. Accordingly, the Court will deny the Debtor's motion to dismiss the Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendant Sahakian's Motion to dismiss and deny Defendant Uni–Marts' Motion to dismiss.

An appropriate Order is attached.

### ORDER

**AND NOW,** this **12th** day of **JANUARY, 2009,** upon consideration of the Defendants' Motions to Dismiss and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Henry D. Sahakian's Motion to Dismiss is **GRANTED;** and it is further

**ORDERED** that Uni–Marts, LLC's Motion to Dismiss is **DENIED.**